TUDRYCK v. MUTCH.

1. BANKRUPTCY—DISCHARGE—EXCEPTIONS—BURDEN OF PROOF.
    Judgment creditor, who claimed his debt was not barred by rea-
    son of debtor's discharge in bankruptcy, had burden of prov-
    ing that his judgment was within the exception of the
    bankruptcy act (52 Stat. at L. 851).

2. SAME—BURDEN OF PROOF—EXAMINATION OF ORIGINAL RECORD.
    In order to determine whether or not a judgment creditor has
    sustained his burden of proving that his debt was not barred
    by the debtor's discharge in bankruptcy, the court may exam-
    ine the entire record in the original action, but neither the
    judgment creditor nor the trial court may go beyond such
    record (52 Stat. at L. 851).

3. SAME—FORM OF ACTION—JUDGMENT.
    The form of the action in which a judgment is obtained is not
    material in determining whether or not collection of the judg-
    ment is barred by the debtor's discharge in bankruptcy, the
    controlling issue being the exact nature of the debt upon which
    the judgment was based (52 Stat. at L. 851).

4. SAME—THEORY OF EXEMPTIONS.
    Exemptions from discharge under the bankruptcy act do not rest
    upon any theory of the exclusion of the creditor from the
    bankruptcy act, hence a creditor may file his claim in the
    bankruptcy proceedings, receive a dividend thereon and still
    maintain an action to collect amount of those items falling
    within the exceptions of the statute (52 Stat. at L. 851).

5. SAME—ACTS UPON WHICH JUDGMENT IS BASED.
    Fact that original judgment indicated that it was based upon
    fraud and deceit is not controlling as to either the judgment
    creditor or debtor in action brought after discharge in bank-
    ruptcy as the record must be examined to determine the true
    nature of the acts upon which the judgment is based (52 Stat.
    at L. 851).

6. SAME—WILFUL AND MALICIOUS ACTS—GARNISHMENT.

    If acts upon which a judgment was based were wilful and ma-
    licious, the debtor's discharge in bankruptcy would not bar
    recovery on the judgment in subsequent garnishment proceed-
    ings (52 Stat. at L. 851).

7. SAME—DEFINITION OF ''WILFUL.''

    ''Wilful,'' as the term is used in characterizing injuries upon
    which liability is not barred by discharge under bankruptcy
    act, means intentional (52 Stat. at L. 851).

8. SAME—''MALICE.''

    While ''malice,'' in common acceptation, means ill will against
    a person, in its legal sense under the bankruptcy act, it means
    a wrongful act, done intentionally, without just cause or ex-
    cuse (52 Stat. at L. 851).

9. TROVER AND CONVERSION—WILFUL AND MALICIOUS INJURY.

    Not every act of conversion results in a wilful and malicious
    injury as there may be an innocent or technical or unauthor-
    ized assumption of dominion without wilfulness or malice.

10. BANKRUPTCY—WILFUL AND MALICIOUS INJURY TO FARM AND
    FIXTURES—DISCHARGE.

    Defendant, cashier of bank which held an unforeclosed mortgage
    upon farm owned by plaintiff, had no right or authority to
    enter upon his land while he was absent, hence recovery for
    injuries to farm and fixtures resulting from wilful and ma-
    licious conduct on defendant's part was not barred by latter's
    discharge in bankruptcy (52 Stat. at L. 851).

11. SAME—JUDGMENT—WILFUL AND MALICIOUS INJURY—CONVER-
    SION OF CHECK.

    Where plaintiff had given defendant a check to be credited on
    mortgage held by bank of which latter was cashier and check
    was converted by defendant, unappealed default judgment
    based on conversion as a wilful and malicious injury held,
    conclusive as to defendant's liability for the conversion of
    the proceeds in garnishment proceedings brought after defend-
    ant's discharge in bankruptcy, hence discharge was not a bar
    (52 Stat. at L. 851).

12. SAME—WILFUL AND MALICIOUS INJURY—FIRE LOSS.

    Defendant's discharge in bankruptcy did not bar recovery by
    plaintiff in subsequent garnishment proceeding where $1,800
    item of unappealed default judgment against defendant was
    based on destruction of plaintiff's house by fire from over-
    heated stove used by people whom defendant had wrongfully

placed in possession of plaintiff's farm while he was living elsewhere, defendant's conduct in giving such possession being wilful and malicious under the circumstances (52 Stat. at L. 851).

13. Same—Wilful and Malicious Injury—Reasonable Value of Use of Property—Discharge.

Recovery of items of judgment against defendant for rent of house on plaintiff's farm before its destruction by fire, use of farm to pasture live stock, use of chicken coop for defendant's own purposes, use of land to raise a crop of barley, being based on right to be paid the fair rental value thereof rather than injury to the property was barred by defendant's discharge in bankruptcy (52 Stat. at L. 851).

Appeal from Arenac; Shaffer (John C.), J. Submitted June 6, 1947. (Docket No. 28, Calendar No. 43,654.) Decided January 6, 1948.

Garnishment proceeding by Tony Tudryck against J. Otis Mutch, principal defendant, and Peoples Commercial & Savings Bank of Bay City, garnishee defendant. Motion by defendant Mutch to quash garnishment levy. Writs of garnishment dismissed in part. Defendant appeals. Plaintiff cross-appeals. Remanded for reconsideration and entry of new order in conformity with opinion.

*Harry J. Lippman,* for plaintiff.

*Clark & Henry,* for defendant.

Carr, J. On April 3, 1940, plaintiff Tony Tudryck brought an action of trespass on the case against defendant J. Otis Mutch. A default judgment of $4,500 was taken against Mutch on September 11, 1940. On April 4, 1942, Mutch filed a petition in bankruptcy and listed this judgment in his schedules. Tudryck filed a claim in the bankruptcy action, received as a dividend thereon the sum of $40.95, and

Mutch was discharged as a bankrupt on January 29, 1943.

On the theory that this judgment was not discharged, various writs of execution were issued and returned unsatisfied, but writs of garnishment from time to time resulted in disclosing sums due Mutch, greatly in excess of the amount of the judgment. Upon stipulation an order was entered releasing the several garnishments and a cash bond of $10,000 was filed in lieu thereof. The order of release, however, was not entered until after motions to quash all writs of garnishments and to stay execution had been heard and denied, the appeal herein being from such an order entered on December 11, 1946. Plaintiff took a cross appeal because of the trial court's reduction in the amount of the original judgment.

Defendant's motion to quash was based upon his discharge in bankruptcy while plaintiff's claim of his right to garnishment is based upon section 17 of the bankruptcy act, as amended in 1938, which reads in part as follows:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, * * * except such as * * * (2) are liabilities for obtaining property by false pretenses or false representations, or for *wilful and malicious injuries to the person or property of another,* or for alimony due or to become due, or for maintenance or support of wife or child, or for seduction of an unmarried female, or for breach of promise of marriage accompanied by seduction, or for criminal conversation." 52 Stat. at L. 851 (11 USCA, 1946 Cum. Supp. § 35).

Plaintiff has the burden of proving that his judgment is within the exception of the bankruptcy act, and in order to determine this the court may examine the entire record in the original action. *Nunn*

v. *Drieborg,* 235 Mich. 383; *Bonnici* v. *Kindsvater,* 275 Mich. 304; and *Horner* v. *Nerlinger,* 304 Mich. 225.

The judgment creditor and the trial court, however, may not go beyond that record. *Rice* v. *Guider,* 275 Mich. 14.

The Court recently stated in *Citizens Mutual Automobile Ins. Co.* v. *Gardner,* 315 Mich. 689, 694:

"In determining whether the collection of plaintiff's judgment is barred by defendant's discharge in bankruptcy the controlling issue is the exact nature of the debt on which such judgment was based. It is well settled that the form of action in which the judgment is obtained is not material. It is also settled law that in determining the nature of the obligation the inquiry is limited to the record on which the judgment is based. In *Field* v. *Howry,* 132 Mich. 687, 693, this Court quoted with approval from the opinion in *Madison Township* v., *Dunkle,* 114 Ind. 262 (16 N. E. 593), as follows:

" 'It is well settled that the courts will look behind a note, a mortgage, or even a judgment, to ascertain the nature of the debt, and, if it is ascertained to be one which a discharge (in bankruptcy) does not bar, it will be so adjudged.' "

A recital of the testimony upon which the default judgment was entered is therefore necessary.

On February 15, 1937, Tudryck, who for 17 years had owned and operated a 140-acre farm near Sterling, Michigan, suffered a crop failure on the only 12 acres which he then had under cultivation, and decided to close the farm and go to Detroit to work. With the help of his brother-in-law, Andrew Smyl, who lived on a farm a short distance away, Tudryck boarded up and nailed all the doors and windows of the farmhouse, barn and other buildings. They then locked the house and the windmill and chained the windmill and the gate leading to the premises.

At this time defendant Mutch was cashier of the Sterling Bank of Sleeper and Chamberlain at Sterling, Michigan, which bank held a mortgage upon plaintiff's farm, not then under foreclosure. Tudryck had a talk with Mutch, during which he informed him that he had locked up the farm, had left the key with his brother-in-law, and was going to work in Detroit. He also told Mutch that he would send what money he could from his Detroit earnings to be applied upon his mortgage indebtedness, and that he would return later and resume farming.

Sometime before plaintiff left the farm he gave Mutch a soldier's bonus check for $480 to apply on the mortgage. A few days later, according to Tudryck, when he asked what had been done with the check, Mutch replied, "I do not know, only I put it on the mortgage, I put it on the mortgage and I never say nothing to you." Tudryck then requested a receipt for the check and Mutch replied, "Well, we will get to that later." A photostatic copy of this check offered in evidence showed that it had been indorsed by Mutch.

After Tudryck left the farm, Mutch took possession without the consent or knowledge of Tudryck, broke the chain on the gate and the lock on the door of the farm house, removed the boards from the windows, and rented the house to some tenants for a period of 13 months, during which time the farm house was totally destroyed by fire. Mutch, also, forcibly gained access to the outhouses, windmill and barn. He removed a chicken house, which had been bolted to a concrete floor, and took it to his own property. Two and one-half years later he dumped it back on plaintiff's farm. The windmill which provided water for the premises was left running, which greatly lessened its value.

During this time Mutch was dealing in wild horses and kept from 12 to 20 of them on the farm for about two and one-half years. In order to provide shelter for them during inclement weather he broke open the barn, removing the flooring and stalls, and took some of this lumber to his own farm. Many of the fences were destroyed and 7 acres of plaintiff's land had been planted with barley.

The trial judge filed a written opinion in which he made the following observation:

"Considerable litigation has come before this court by reason of, or growing out of, the Sterling Bank receivership, and, in passing, I might properly observe that had defendant appeared, pleaded and testified, some justification for the defendant's acts might possibly have been before the court."

He found that defendant, by his default, admitted that he had wilfully and deliberately gone upon the premises without consent or color of right or authority, had committed the injuries above described, and that such wrongful acts on the part of Mutch were without just cause or excuse. He held, however, that $540 should be deducted from the original judgment to cover the $480 soldier's bonus check, because of plaintiff's lack of proof that it had not been credited upon the mortgage. He also deducted the amount of dividend plaintiff had received in the bankruptcy proceedings and found that there was a balance of $3,978.25 in the judgment unaffected by the discharge in bankruptcy, which plaintiff was entitled to recover, with interest, from September 11, 1940.

There are two important factors to be considered, (1) whether plaintiff, having filed his claim in bankruptcy and having received a dividend thereon, can still maintain that his judgment against Mutch has not been discharged; and (2) what items of the judg-

ment fall within the statutory exception of the bankruptcy act.

The first may be disposed of by reference to the language of Mr. Chief Justice White in *Friend* v. *Talcott,* 228 U. S. 27 (33 Sup. Ct. 505, 57 L. Ed. 718), where he said:

"Thus, section 63a and b (30 Stat. 562) enumerates the debts which may be proved and which are therefore entitled to participate in the benefits of the act and are bound by its provisions, including a discharge. Section 17 (30 Stat. 550) enumerates the debts not affected by a discharge, that is, those exempted from its operation. It is apparent that the exemptions do not rest upon any theory of the exclusion of the creditor from the bankrupt act or of deprivation of right to participate in the distribution, but solely on the ground that although such rights are enjoyed, an exemption from the effect of the discharge is superadded. The text leaves no room for any other view, since the exceptions in terms are accorded to certain classes of debts which are provable under section 63, and therefore debts which are entitled to participate in the distribution, the language being: 'A discharge in bankruptcy shall release a bankrupt from all of his *provable* debts, except such as,' et cetera." (30 Stat. at L. 550, chap. 541, U. S. Comp. Stat. Supp. 1911, p. 1495). See, also, 42 U. S. Stat. at L. p. 354 (11 USCA, § 35).

Plaintiff, therefore, was entitled to file his claim in the bankruptcy proceedings, receive a dividend thereon, and still maintain an action to collect the amount of those items which fall within the exceptions of the bankruptcy statute. The fact that the language of the original judgment indicates that it was based upon "fraud and deceit," is not controlling as to either party, but the record must be examined to determine the true nature of the acts upon which the judgment was based. *Citizens Mutual*

*Automobile Ins. Co.* v. *Gardner, supra.* If these acts were wilful and malicious, the motion to quash was properly denied.

It is, however, necessary to separately consider the individual items comprising plaintiff's judgment against Mutch, because each may be predicated upon a different act, and some may have been malicious and wilful while others may not. As stated in *Nunn* v. *Drieborg, supra,* 386, "wilful means intentional," and "malice, in common acceptation, means ill-will against a person, but in its legal sense it means a wrongful act, done intentionally, without just cause or excuse." See *Tinker* v. *Colwell,* 193 U. S. 473 (24 Sup. Ct. 505, 48 L. Ed. 754), and *Probst* v. *Jones,* 262 Mich. 678.

In *Davis* v. *Aetna Acceptance Co.,* 293 U. S. 328 (55 Sup. Ct. 151, 79 L. Ed. 393), the court said:

"But a wilful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without wilfulness or malice.  *  *  *  There may be an honest but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a wilful and malicious one."

Defendant argues that his acts were done under an honest but mistaken belief that Tudryck had abandoned his farm and therefore he had the right to go upon the land in an attempt to reduce the indebtedness upon the mortgage. The facts, however, clearly indicate the contrary, and defendant failed completely to show by what authority he was acting for the bank as their agent in going upon the farm; nor did he show that any of the proceeds from his tortious acts were actually applied upon the mortgage

indebtedness.    Neither the defendant nor the bank
had any right or authority whatever to enter upon
plaintiff's land.  *Meyers* v. *Ermolik,* 301 Mich. 284,
and authorities therein cited at page 291.

The record discloses that the injuries to plaintiff's
farm and fixtures thereon resulted from wilful and
malicious conduct on the part of defendant.  In con-
sequence, under the pertinent provision of the bank-
ruptcy statute (11 USCA, 1946 Cum. Supp. § 35, as
amended June 22, 1938, c. 575, § 1, 52 Stat. at L. 851),
defendant's discharge in the bankruptcy proceeding
is not a bar to the enforcement of the judgment inso-
far as it was based on such injuries.

The check in question was delivered by plaintiff
to defendant with the understanding that the pro-
ceeds thereof would be credited on a mortgage debt
owing by plaintiff.  If so credited, defendant was not
liable on the basis of this transaction.  However,
judgment inclusive of the amount of the check, with
interest, was rendered in plaintiff's favor.  Obvi-
ously such action rested on the theory that the
proofs established a conversion by defendant.  No
attempt was made to have the judgment set aside,
nor was there any appeal therefrom.  It is, there-
fore, conclusive as to defendant's liability for the
conversion of the proceeds of the check, which,
under plaintiff's theory, was a wilful and malicious
injury.  The fact that it was a default judgment does
not alter the situation in this respect.  *Hazen* v.
*Reed,* 30 Mich. 331; *Jacobson* v. *Miller,* 41 Mich. 90.
See, also, *Hoadley* v. *Gafill Oil Co.,* 241 Mich. 15;
*Peters* v. *Sturmer,* 263 Mich. 494.

The declaration alleged that defendant converted
the money to his own use "fraudulently, wrongfully
and unlawfully."  Obviously, if he converted the
money as the trial court found, he must be consid-
ered on this record as having done so wilfully and

with at least legal malice. In *Probst* v. *Jones,* 262 Mich. 678, it was held that the defendant, who executed and delivered a deed of real property as security for a loan and then sold the land to a good-faith purchaser before the deed was recorded, was guilty of a wilful and malicious injury to property within the meaning of the exception in the bankruptcy statute above cited. In reaching this conclusion it was said:

"Injuries within the meaning of the exception are not confined to physical damage or destruction. Wilful and malicious conversion is an injury to property within the meaning of the present law, and liability therefor is not released by the discharge. The exception has been held to cover conversion of motor vehicles (*In re Brier,* 3 Fed. [2d] 709; *In re Franks,* 49 Fed. [2d] 389); collections on accounts assigned as security (*Baker* v. *Bryant Fertilizer Co.* [C.C.A.], 271 Fed. 473); and sales of corporate stock (*McIntyre* v. *Kavanaugh,* 242 U. S. 138 [37 Sup. Ct. 38, 61 L. Ed. 205]). These cases dispose of any confusion which may have existed by reason of *In re Toklas Bros.,* 201 Fed. 377; and *Crawford* v. *Burke,* 195 U. S. 176 (25 Sup. Ct. 9, 49 L. Ed. 147)."

See, also, *American Surety Co.* v. *McKiearnan,* 304 Mich. 322 (145 A. L. R. 1235); *Citizens Mutual Automobile Ins. Co.* v. *Gardner, supra.* The facts in the case at bar do not warrant an inference that defendant converted the money either negligently or under a misapprehension as to his rights. The judgment being based on the question of a conversion, the conclusion cannot be avoided that defendant's act was intentional, wilful and malicious. Enforcement of that portion of the judgment based on such conversion is, therefore, not barred by the discharge in bankruptcy.

Included in the judgment was an item of $1,800. covering loss sustained by plaintiff through the destruction of his house by fire. It is apparent from the record that recovery on this portion of plaintiff's cause of action rested on the theory that defendant's wrongful conduct in taking possession of the house and renting it to others was the proximate cause of the loss. There is testimony to the effect that the fire resulted from an overheated stove, presumably used by those whom defendant had put in possession. For the reasons above pointed out the judgment is controlling on the question of proximate cause. It cannot now be questioned, therefore, that the destruction of the house was brought about by defendant's conduct; and under the pleadings and the proofs such conduct must be deemed wilful and malicious. The discharge in bankruptcy is, in consequence, not a bar to the enforcement of such part of the judgment.

Plaintiff alleged in his declaration that defendant, without right or authority so to do, rented the house for a period prior to its destruction by fire, that he used the farm to pasture live stock, that he also used a chicken coop for his own purposes, and that he raised a crop of barley on seven acres of plaintiff's farm. In the declaration, and likewise in the bill of particulars, plaintiff alleged the right to recover for "use, occupancy and rental value" of the property so used. Obviously this part of plaintiff's claim was not based on injury to the property but rather on the right to be paid the reasonable value of the use thereof. The testimony on this phase of the case had reference to "fair rental values" and no proof was offered in this connection indicating damage to property. No attempt was made to show how much rent, if any, defendant had

collected from the occupants of the house. Recovery was not sought on the basis of defendant's conversion of money that he had collected for plaintiff's benefit for the use of plaintiff's property. The amount of these claims for rent was clearly not included in the judgment on any possible theory that plaintiff's property had been damaged by the use for which recovery of the rental was sought. Such items, not being for "wilful and malicious injuries" to plaintiff's property, are not within the exception in the bankruptcy law here involved, and in consequence their collection is barred by the discharge in bankruptcy.

Except as above indicated the order of the trial court from which the parties have appealed was correct at the time it was entered. However, the writs of garnishment were subsequently released pursuant to stipulation of the parties, as before noted, and a bond was filed pursuant to said stipulation. The case is remanded to the trial court for the entering of an order in accordance with this opinion, and in keeping with the altered situation, with costs of both courts to plaintiff.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.