[Civ. No. 23429.   Second Dist., Div. Three.   Apr. 17, 1959.]

UNITED STATES CREDIT BUREAU, INC. (a Corporation), Respondent, v. MARY DIGORAS, Appellant.

J. B. Mandel for Appellant.

Hayes, Bletz & Lawson and S. Oliver Bletz for Respondent.

WOOD (Parker), J.—In 1946, Betty Viner, Business Women's Association, and Western States University obtained a judgment for $6,000 against Mary Untrecht, who is now known as Mary Digoras and is the defendant herein. In 1951, the plaintiff herein, United States Credit Bureau, Inc., to which the judgment had been assigned, obtained a new judgment, based on the 1946 judgment. In 1955, defendant received a discharge in bankruptcy. The plaintiff herein, Credit Bureau, was listed as a creditor in the bankruptcy proceeding. In 1958, defendant made a motion in the superior court, under section 675b of the Code of Civil Procedure, for an order directing the cancellation and discharge of the 1951 judgment. The motion was denied.

Defendant appeals from the order denying the motion.

Section 17 of the Bankruptcy Act (11 U.S.C.A. § 35) provides, in part: ''(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . except such as . . . (2) are liabilities . . . for willful and malicious injuries to the . . . property of another.''

The question herein is whether the 1946 judgment was based upon a willful and malicious injury to the property of the persons who were plaintiffs in the original action. If the 1946 judgment was based upon such an injury, the 1951 judgment was not dischargeable in bankruptcy. (See *Wilson* v. *Walters*, 19 Cal.2d 111, 121 [119 P.2d 340].)

In 1942, Betty Viner, Business Women's Association, and Western States University commenced an action against Mary

Untrecht (who is now known as Mary Digoras and is the defendant herein) to obtain a judgment that defendant held certain real property as trustee, to recover possession of certain personal property, and to recover punitive damages for withholding the personal property.

Some of the findings therein were, in effect, as follows: In 1940 Mary agreed to lend money, not exceeding $1,500, to the association to be used in paying part of the $6,300 purchase price of a house and lot; the association agreed to provide a room in the house for Mary until the loan was repaid, and agreed that she might attend the university without charge; it was also agreed that, as security for the loan, title to the property would be vested in Mary until the loan was repaid; Mary paid $715 as the down payment for the property; title to the property was conveyed to Mary; Betty Viner was president of the association and was secretary of the university; after Mary acquired title to the property, Viner moved certain furniture into the house; thereafter the university conducted classes in the house, and Mary attended classes; Viner, the association, the university, Mary and other members of the association occupied the property about one and one-half years; during that time Viner and Mary made payments for improvements, taxes, and installments on the purchase price; the total amount paid by Mary, including the down payment, was $1,679.62; after the property had been so occupied about one and one-half years, Mary notified Viner, the association, and the university to the effect that she cancelled any agreement she had made with them, and that she was the owner of the real property; thereafter Mary occupied the house and collected room rent from other persons residing there; she claimed a lodging-house keeper's lien for $3,142 upon certain personal property which was owned by Viner and the university (the property owned by Viner was house furniture and furnishings—the property owned by the university was office desks, chairs, and bookkeeping machines, etc.); she claimed ownership of certain other personal property (house furniture and furnishings) which they owned. Viner and the university demanded that Mary release the personal property but she refused to comply with the demand.

In that action (commenced in 1942) the court also found that Mary held title to the real property as trustee for the association; she had a lien on the real property for money advanced to Viner, the association, and the university; the association was entitled to possession of the real property;

Mary had no lien upon or interest in the personal property, and she withheld the personal property from the university and Viner; the withholding of the personal property from the university "was willful and without just or any cause therefor and was done for the purpose of harassing" the university; the withholding of the personal property from Viner "was willful and wholly without right and was done for the purpose of harassing" Viner; the university and Viner were entitled to punitive damages of $500 each for such withholding; the university and Viner had incurred attorneys' fees of $500 each for legal services in securing a return of the personal property; Mary should account to the association for the rent received by her from the real property from July 4, 1942, until the association receives possession of the property. The findings also include a statement to the effect that it is necessary that an interlocutory judgment be made restoring to plaintiffs their possession of said properties, in order that a final accounting may be made of such sums as the plaintiffs may be entitled to receive, by reason of the acts of defendant, at the time when such possession is had; and upon the plaintiffs taking possession of said properties they shall forthwith charge the defendant with the value of the use and occupancy of the real property and the value of the personal property which may have been withheld by defendant; that after the entry of the interlocutory judgment, any party to the action may move the court to make its final judgment "in accordance with the foregoing."

On July 7, 1943, an interlocutory judgment was entered in that action. That judgment provided that the association was the owner and was entitled to the possession of the real property; Mary had no interest in the real property, except a claim of lien thereon in the amount of $1,679.62 for money loaned to the association for part of purchase price, taxes, and improvements; the association was entitled to a setoff of $623.55 (net amount of rentals collected by Mary) against said lien; the university and Viner were the owners and were entitled to the possession of certain personal property; Viner and the university shall have judgment for $500 each for attorneys' fees incurred in recovering possession of the personal property; Mary should account for the personal property; after she "shall account" for the personal property, a hearing should be had to charge her "for any of said personal property not made available to plaintiff," and judgment should be "rendered also for the value of such of said prop-

erty'' as may be damaged or not produced by Mary; the association was entitled to a deed from Mary conveying the title of the real property to the association upon the payment to Mary of any amounts due to her from the association, after the application of any setoff.

As above stated, there was a finding that the university and Viner should recover punitive damages of $500 each. It is to be noted, however, that in the judgment there was no award of punitive damages. Also there were findings that Mary should account for the use and occupancy of the real property and should account for the personal property (furniture, etc.). It is to be noted that the only provision in the judgment regarding an accounting was that she should account for the *personal* property.

Mary Untrecht, defendant in that case, appealed from the interlocutory judgment. On that appeal the judgment was modified by striking out the provision awarding attorneys' fees. (*Viner* v. *Untrecht*, 26 Cal.2d 261 [158 P.2d 3].) The plaintiffs (respondents) in that case asserted on appeal (p. 272) that the findings concerning attorneys' fees should be interpreted as referring to punitive damages. The court therein said (p. 272): ''The court . . . did not award punitive damages, rather it found that plaintiffs had incurred attorney's fees in the sum of $1,000 in pursuit of the property and awarded that amount.'' As above indicated, the award of attorneys' fees was stricken out and the judgment, as so modified, was affirmed.

On May 6, 1946, after the remittitur in that action had been filed in the trial court, the plaintiffs obtained an order that Mary show cause why she ''should not render an accounting, turn over all the personal property referred to in the judgment heretofore rendered, and for the execution of a deed to the Business Women's Association in accordance with the terms of the judgment.'' A hearing was held on the order to show cause, and on June 17, 1946, a minute order was entered which provided: ''As per stipulation by both sides, the Court makes the following order: Final judgment is for the plaintiffs and against the defendant in the sum of $6,000.00. Findings are waived.''

The final judgment, entered on August 21, 1946, provided: ''The . . . action came on for hearing on Order to Show Cause re Accounting . . . . Findings of Fact and Conclusions of Law being waived, the Court orders, adjudges and decrees:

1. Final judgment is for the plaintiffs and against the defendant in the sum of Six Thousand ($6,000.00) Dollars.''

The stipulation, upon which the 1946 judgment was based, that is, the stipulation as to the amount for which judgment should be rendered upon the accounting, did not state what part of the $6,000, if any, represented the accounting for the personal property, or what part thereof, if any, represented the accounting for the use and occupancy of, or the rents from, the real property. It cannot be determined from the judgment whether the $6,000 represented an accounting in connection with the personal property or the real property, or whether a part of the $6,000 related to the personal property and a part of it related to the real property. As above stated, there was a finding that the withholding of the *personal* property by defendant Mary was willful and without just cause and was for the purpose of harassing the university and Viner. There was no finding that she withheld the real property in such manner, but there was a finding that she should account for the use and occupancy of, and rents from, the real property. The interlocutory judgment included a provision that she should account for the personal property which she withheld, but it did not include a provision that she should account with respect to the real property. In attempting to determine, however, whether the $6,000, set forth in the final judgment, related solely to an accounting in connection with the personal property or whether it also related to an accounting in connection with the real property, consideration should be given to the finding that Mary should account for the value of the use and occupancy of, and rents from, the real property. That finding would indicate that the final judgment, which purportedly was made pursuant to the findings and interlocutory judgment, would include an accounting with respect to the real property. Also, in attempting to determine what accounting or accountings were represented by the $6,000, consideration should be given to a finding that the value of the personal property was $3,500. It is apparent, from that finding, that the $6,000 was not intended to represent the amount which Mary should pay in accounting for personal property of the value of $3,500. It thus appears that the $6,000 related to an accounting with respect to both personal and real property.

As above stated, the finding with respect to willfully withholding property stated specifically that it was personal property that was so withheld. It is to be noted that there was no

finding that the real property or the rent was willfully withheld; but, on the contrary, there was a finding that Mary had a lien on the real property for money advanced by her for the down payment, other installments, taxes, and improvements. The factual background of the real property transaction indicates that it was Mary's money that constituted the principal investment in the real property; that more than a year had elapsed from the time she made the down payment, and no reimbursement had been made for money advanced by her; and a controversy existed as to whether she was the owner or the trustee of the real property. Under such circumstances it might well be that the judge (at the trial in 1943) considered that, from Mary's viewpoint of the existing controversy, there was at least color of right or authority, on her part, in taking possession of the real property, and for that reason the judge did not find that she withheld the real property willfully and without just cause.

The specific finding that the personal property was willfully withheld, and the absence of a finding that the real property or rent was willfully withheld, the finding that Mary had a lien on the real property, and the factual background of the real property transaction indicate that the part of the $6,000 which represented an accounting with respect to the *real property* was not based upon a willful and malicious injury to property.

It appearing that a part of the $6,000 judgment represented an accounting with respect to real property, and that the part thereof relating to real property was not based upon a willful and malicious injury to property (as referred to in the Bankruptcy Act, § 17), question arises as to how much of the $6,000 related to real property and therefore was dischargeable in bankruptcy. In *Tudryck* v. *Mutch*, 320 Mich. 86 [30 N.W. 2d 512], the question was whether a judgment was based upon willful and malicious injuries to property, within the meaning of section 17 of the Bankruptcy Act. In that case the defendant, without plaintiff's knowledge or consent, occupied and used plaintiff's farm, and rented the farmhouse to others and kept the rent. It was said therein that it was necessary to separately consider the items comprising the judgment, for the reason that some of the items might have been based upon willful and malicious acts and other items might not have been based upon such acts. In that case it could be determined from the record that some of the items were based on willful and malicious injuries to property. It was held therein that the

portions of the judgment which were based on such injuries were not dischargeable in bankruptcy; and that other portions of the judgment which were not based on such injuries were dischargeable in bankruptcy. With reference to the rent which defendant therein had collected, it was said that under the circumstances of that case the plaintiff's claim for rent ''was not based on injury to the property but rather on the right to be paid the reasonable value of the use thereof,'' and that the amount of the rent was ''not included in the judgment on any possible theory that plaintiff's property had been damaged by the use for which recovery of the rental was sought,'' and that the part of the judgment for rent ''not being for 'wilful and malicious injuries' to plaintiff's property,'' was dischargeable in bankruptcy. In the present case, as above stated, it cannot be determined from the judgment, nor from the stipulation as to the amount of the judgment, nor from the record, how much of the $6,000 (amount of the judgment) relates to real property or how much of it relates to personal property. A certified copy of appellant's discharge in bankruptcy having been filed in support of her motion to cancel the judgment, the burden was upon respondent (credit bureau) to show that the judgment or a specified part of it was not dischargeable in bankruptcy. (See *Morris* v. *Drubin,* 165 Cal.App.2d 467, 469-470 [332 P.2d 371].) Respondent has not sustained that burden.

The order denying the motion to cancel the judgment is reversed, and the superior court is directed to make an order granting the motion.

Shinn, P. J., and Vallée, J., concurred.