BASTIAN, Plaintiff, v. LEROY, Defendant and Respondent: SHELTON, Impleaded Defendant and Appellant.*

*June 6—June 28, 1963.*

* Motion for rehearing denied, with $25 costs, on October 1, 1963.

472

474

For the appellant there were briefs by *Grootemaat, Cook & Franke,* attorneys, and *Robert E. Cook* and *John J. Ottusch* of counsel, all of Milwaukee, and oral argument by *Robert E. Cook.*

For the respondent there was a brief by *deVries, Hollander & Vlasak* of Milwaukee, and oral argument by *Stephen C. deVries.*

WILKIE, J.   There are three issues to be decided on this appeal. They are:

1. Did the respondent LeRoy meet his burden of proof in proving that the subject judgment was not discharged in bankruptcy proceedings?

2. Did LeRoy waive any possible tort action, such as the present claim of embezzlement, by bringing an action for breach of contract?

3. Did Shelton violate sec. 289.02 (4) and sec. 235.701, Stats., so that the LeRoy judgment was not dischargeable under sec. 17 of the Bankruptcy Act?

*LeRoy had Burden of Proving that Judgment Was Not Discharged under Sec. 17 (a) of Bankruptcy Act.*

Sec. 17(a) of the Bankruptcy Act provides:

". . . (a) A discharge in bankruptcy shall release a bankrupt from all his provable debts . . . except such as . . . (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity: . . ."

In 6 Am. Jur., Bankruptcy, p. 1027, sec. 810, it is stated:

"Soundly considered, the defense of discharge is an affirmative one which the bankrupt as a defendant must sustain; but upon the introduction in evidence of a certified copy of the order of discharge, the burden to produce evidence in avoidance of the discharge shifts to the creditor as plaintiff. . . . The burden of proof that a debt comes within an exception provided by sec. 17 of the Bankruptcy Act (11 USCA sec. 35, FCA title 11, sec. 35) rests upon the creditor as plaintiff in an action upon the debt, after the order of discharge is in evidence."

Since the order of discharge as to the LeRoy judgment against Shelton was placed in evidence, LeRoy then had the burden of producing evidence in avoidance of the discharge.

As to whether LeRoy has successfully maintained his burden of proof, we have before us the orders of Judge LANDRY, his decisions, and the judgment, findings of fact and conclusions of law, and the related decision of Judge SWIETLIK.[4] There is no bill of exceptions on the proceedings in Judge LANDRY's court and there could be none because no testimony was taken.[5] In the absence of a bill of exceptions we must assume that the findings of fact made by Judge SWIETLIK are supported by the evidence.[6]

[4] In *Estate of Niemczyk* (1954), 266 Wis. 512, 64 N. W. (2d) 193, this court held, at page 516: "The order of the trial court recites that the same is based upon certain records, pleadings, testimony, exhibits, and proceedings stipulated into the record by the parties. Inasmuch as these are not before us by way of a bill of exceptions, we must assume that they were sufficient to sustain the order."

[5] In *Kanios v. Frederick* (1960), 10 Wis. (2d) 358, 103 N. W. (2d) 114, the court held that it was impossible to have a bill of exceptions except after trial of an issue of fact. (Citing sec. 270.43, Stats.)

[6] See *Kanios v. Frederick, supra; Estate of Niemczyk, supra; Dunn v. Dunn* (1951), 258 Wis. 188, 45 N. W. (2d) 727; *Bobczyk v. Integrity Mut. Ins. Co.* (1941), 239 Wis. 196, 300 N. W. 909.

The pertinent findings of fact and conclusions of law as made by Judge SWIETLIK are as follows:

## "FINDINGS OF FACT

"5. That the interpleaded defendant, Burton T. Shelton, breached the contract with the defendant in the following respects:

"(b) The interpleaded defendant, Burton T. Shelton, failed to furnish mechanics lien waivers and failed to pay materialmen and laborers although he received payments on account exceeding the cost of the work done on defendant's premises.

"(d) That the interpleaded defendant demanded more money before he would proceed with the job although he was already overdrawn, and that on the 10th day of June, 1955, the said interpleaded defendant, Burton T. Shelton, wrongfully discontinued work on the defendant's premises.

"(e) That the interpleaded defendant, Burton T. Shelton, paid workmen for work on other jobs out of the funds received on account of the defendant's job.

"(f) *That the interpleaded defendant, Burton T. Shelton, received payment on account of the defendant in the sum of Fifteen Thousand Seven Hundred Twenty-two Dollars ($15,722.00) which was adequate to pay all the sums owed to workmen, laborers, sub-contractors, and materialmen for defendant's job, but the said interpleaded defendant failed to pay all of the same . . . .*" (Emphasis added.)

## "CONCLUSIONS OF LAW

"2. That the defendant, Lloyd W. LeRoy is entitled to judgment on his crosscomplaint against the interpleaded defendant, Burton T. Shelton for the sum of . . . ($4,683.44) plus the further sum of Five Hundred Sixteen and 40/100 Dollars ($516.40) with interest on the latter sum from June 10, 1955, with costs."

In discussing Judge SWIETLIK's decision, Judge LANDRY stated:

"The opinion of the court does not pronounce the defendant guilty of misappropriation or defalcation of $5,287.84 from the trust account with the Savings and Loan. [Shelton had withdrawn $14,582.00 from the LeRoy building account at the West Side Savings and Loan.] However, the opinion does substantiate the proposition that the interpleaded defendant did violate his trust by removing amounts in excess of that which he was entitled to receive. *There is a mathematical inference that the amount which was improperly taken out of trust was in the amount of the judgment entered against the interpleaded defendant.*" (Emphasis ours.)

Shelton may not question the findings of fact and conclusions of law as entered by Judge SWIETLIK except to point out any error of law therein. Shelton may show that Judge LANDRY has misinterpreted or misstated those findings or conclusions in the process of entering his own decision and orders.

*In Determining Whether a Judgment is Dischargeable, the Trial Court May Look Behind the Judgment and Consider Entire Record.*

In determining whether the liability of a judgment debtor is dischargeable in bankruptcy under sec. 17 (a) of the Bankruptcy Act, Wisconsin follows the liberal practice of permitting a court to look behind a judgment and to consider the entire record, and the actual fact disclosed thereby as the basis for the adjudged liability will govern.[7]

Applying this rule to the instant case, Judge LANDRY was permitted to look behind the judgment entered on the basis of Judge SWIETLIK's findings of fact and conclusions of law to ascertain whether or not this LeRoy judgment

---

[7] *Aetna Casualty & Surety Co. v. Lauerman* (1961), 12 Wis. (2d) 387, 107 N. W. (2d) 605; *Klatt v. Helming* (1946), 248 Wis. 139, 21 N. W. (2d) 261; *Estate of Weil* (1946), 249 Wis. 385, 24 N. W. (2d) 662; *Globe Indemnity Co. v. Granskov* (1944), 246 Wis. 87, 16 N. W. (2d) 437.

was dischargeable in bankruptcy. Part of the record that he could consider was Judge SWIETLIK's decision. Although LeRoy based his original action in Judge SWIETLIK's court on breach of contract by Shelton, in the proceedings before Judge LANDRY he was not prevented from looking behind the LeRoy judgment and concluding that the debt was not properly dischargeable in bankruptcy.

*The Judgment Entered as a Result of the Proceedings Before Judge Swietlik Was Not Dischargeable under Sec. 17 (a) of the Bankruptcy Act.*

In his decision Judge SWIETLIK determined that Shelton had breached his construction contract with LeRoy in a number of respects and, as pertinent here, stated:

"The court is satisfied from the evidence that all payments made to the plaintiff by the general contractor, as evidenced by checks included in Exhibit 1, came from funds which the general contractor received from the defendant or his financing agent, the West Side Savings & Loan Association, on account of the amount due him for constructing defendant's premises.

"However, the court is also satisfied that some of these checks, referring particularly to those paid to the plaintiff in the month of December, 1954, were given to the plaintiff *for work done on the Bartels job* and not for work done on the defendant's premises. [Emphasis added.]

". . .

"It does appear that the general contractor used money which he received from the defendant on account of said contract to pay the plaintiff who worked on premises other than the defendant's premises here in question. This is especially true of payments made by the general contractor to the plaintiff in the month of December, 1954. The court is satisfied that the December payments were made to plaintiff for work which he performed on the Bartels job.

". . .

"Money paid to a general contractor by the owner of premises under construction is a trust fund. . . .

". . .

". . . Burton T. Shelton, breached his contract with the defendant in the following respects:

"(b) His failure to furnish mechanic's liens and his failure to pay material men and laborers *although he received payments on account of the contract price exceeding the amount of the work done.* The evidence disclosed that five liens were filed against the defendant's premises for work done and material furnished to said premises, to wit: [Emphasis added.]

"1. 55918—filed by Donald Bastian, for the sum of $707.20.

"2. 55919—filed by Roman Hasselberger, on July 13, 1955, for work done between the 28th day of December, 1954, and the 2nd day of June, 1955, for the sum of $148.50.

"3. 55979—for lumber furnished . . . and unpaid for from the 15th day of March, 1955, to the 17th day of June, 1955, in the sum of $965.85."

(Nos. 4 and 5 are other liens not pertinent here.)

Judge LANDRY, in his first opinion, dated July 26, 1962, concluded in part:

"The opinion of the trial court in the instant case sufficiently supports the defendant's contention that the violation of the trust constituted a valid defense to a discharge of this debt in bankruptcy."

In his second opinion, dated November 29, 1962, Judge LANDRY stated this in amplification:

"The fact that the original trial court granted judgment for a specific sum does not compel the conclusion that Shelton misapplied funds entrusted to him precisely in that amount. LeRoy's claim against Shelton is for damages sustained by breach of contract, and only to the extent to which those damages are attributable to misapplication or misappropriation is the indebtedness not dischargeable in bankruptcy.

" . . .

". . . Shelton had the burden of coming forward with proof either to rebut the legal inference that this net bal-

ance was more than his cost and profit would have been or that the contract was improvident for him, resulting in operating below cost. His failure so to do leads to the conclusion that this sum was misapplied in accordance with the reasoning employed by the decision of this court on special proceedings. . . .

"...

"The pertinent portion of sec. 289.02 (4) [effective date of statute—May 13, 1955] as amended provides that moneys 'paid to any principal contractor . . . constitute a trust . . . to the amount of all claims due and to become due or owing . . . until all such claims have been paid; and the use of any such moneys by any contractor or subcontractor for any other purpose . . . is theft of moneys so misappropriated.'

"It is immaterial to the determination of this motion whether the debts which Shelton was obliged to discharge with the money he received accrued before or after he received the money."

And Judge LANDRY concluded:

"The trial court held in its decision of October 28, 1959, that the defendant served a written notice on Shelton on July 11, 1955; that he would consider the contract breached unless Shelton furnished him with certain waivers of liens and proceeded with the completion of the building. It is undisputed that Shelton discontinued the work on the premises on the 10th day of June, 1955. *The misapplication of funds took place in this period. There was a rebuttable inference that the misappropriation occurred on July 11, 1955, when Shelton refused to pay the subcontractors and obtain waivers.* It was Shelton's burden to come forward with evidence that this misapplication of funds took place before the termination of the contract according to the notice given to him by LeRoy and prior to the effective date of the statute relied upon. Shelton failed to come forward with any such evidence." (Emphasis added.)

A brief recapitulation of the figures behind the judgment is as follows:

```
LeRoy paid to Shelton  ............$15,722.00
LeRoy paid to complete construction..   9,251.38
                                     ───────────
                                     $24,973.38
Less credits to Shelton  ............    288.94
                                     ───────────
                                     $24,684.44
Total contract price  ...............  19,913.00
                                     ───────────
Amount payments exceed contract ...$ 4,771.44
Adjustments by court  ..............     88.00
                                     ───────────
Amended Judgment  ................$ 4,683.44
Amount of Bastian Judgment against
    LeRoy on lien foreclosure
    ($516.40 plus interest and costs).    635.80
                                     ───────────
Total Judgment of LeRoy
    against Shelton  ..............$ 5,319.24
```

In considering whether LeRoy sustained his burden of proving the judgment nondischargeable, it is crucial to note that Judge SWIETLIK found that none of the additional money paid out by LeRoy to complete the house was to correct defects in construction allegedly caused by Shelton. Thus he stated:

"The building as it stands today is not constructed according to plans and specifications. It contains many defects, according to the testimony of the architect, but no claim is made for those defects. The only claim that is made by the defendant is for money actually expended for the completion of said building."

Neither did Shelton contend or show in any way that his costs were running above those used in determining the contract price.

Thus, it is apparent from the above-quoted excerpts from the decision, findings of fact, and conclusions of law of Judge SWIETLIK and from the opinions of Judge LANDRY that both judges concluded that LeRoy had paid Shelton enough to satisfy all proper charges against the home con-

tract and that since some of the obligations were not paid by Shelton, he had misappropriated the total amount of the judgment, or $5,319.24, as computed above.

The trust fund created by sec. 289.02 (4) and sec. 235.701, Stats., becomes such when the money has been paid by the owner or mortgagee to the contractor for improving the owner's property (as here).[8] Shelton had enough money to pay all claims, yet he did not. Some of the claims were due at the time Shelton received his total payments either from the owner or mortgagee.

Judge SWIETLIK found that the contractor received total payments of $15,722 and although these payments exceeded the amount of the work done, Shelton had failed to pay for all the materials and labor chargeable to the LeRoy job under his construction contract and had refused to furnish the required and requested lien waivers. He also found that Shelton had used some LeRoy money to pay Bastian for some work done on another job.

Judge LANDRY, relying on Judge SWIETLIK's decision and findings of fact and conclusions of law, held that the amount of the judgment represented funds that Shelton had misappropriated, that there was a "mathematical inference" that the amount improperly taken out of trust was the amount of the LeRoy judgment, and that the misappropriation occurred between June 10, 1955, the date when Shelton discontinued work, and July 11, 1955, the date when Shelton received notice from LeRoy that he was to pay the subcontractors and obtain waivers (which Shelton did not pay).

In going behind the LeRoy judgment and in determining whether LeRoy has sustained his burden of proof or whether Shelton has come forward with a suitable explana-

[8] *Visser v. Koenders* (1959), 6 Wis. (2d) 535, 95 N. W. (2d) 363.

tion to rebut the determined misapplication of funds, Judge LANDRY was permitted to look at Judge SWIETLIK's decision and findings of fact and conclusions of law, all matters of record; neither party could go dehors that record and present new evidence. This was the ruling in the *Lauerman, Klatt, Weil,* and *Granskov Cases, supra.* We realize this rule is contrary to the minority position reported in the annotation at 170 A. L. R. 368, pp. 378, 379, which asserts that the nondischargeable character of a judgment may be shown by evidence dehors the record.

LeRoy sustained his burden of proving that the judgment he won in Judge SWIETLIK's court involved the misappropriation of funds by Shelton as the contractor in the amount of the judgment and in violation of sec. 289.02 (4), Stats., and that the judgment, therefore, was not dischargeable under sec. 17 (a) of the Bankruptcy Act.[9]

*By the Court.*—Orders of August 3, 1962, and December 5, 1962, affirmed.

---

[9] In *United States Credit Bureau v. Digoras* (1959), 169 Cal. App. (2d) 673, 337 Pac. (2d) 866, a contra result was decreed by an intermediate appellate court in California where a debtor had received a discharge in bankruptcy and one of the judgments listed against her was for $6,000 covering a debt for both real and personal property. The court looked behind the judgment and found that an undeterminable part of the judgment was for wilfully withholding personal property and that there was no such finding on that part of the debt associated with the real property. The court ruled that the creditor had the burden of proving the debt was not discharged under sec. 17 (a) of the Bankruptcy Act and since the findings disclosed that a part of the debt was not based upon a wilful and malicious injury to property, the creditor had not sustained his burden of proof and the whole debt was discharged. The court cited *Tudryck v. Mutch* (1948), 320 Mich. 86, 30 N. W. (2d) 512, wherein the Michigan supreme court declared that in looking behind a judgment in that case it could be determined from the record that some of the items in the judgment were based on wilful and malicious injuries to property so that part of the judgment could

FAIRCHILD, J. (*dissenting in part*). In my view, the record establishes two propositions: (1) Some portion of the judgment, though granting a recovery for breach of contract, represented debts created by Shelton's defalcation; (2) the total defalcation was at least as large as $1,821.55, the sum of the liens which the court found were unpaid though sufficient funds had been on hand.

I can agree that to the extent of $1,821.55 the judgment has not been discharged. The supreme court of Michigan has held that where the record shows that the judgment includes both dischargeable and nondischargeable debts in certain amounts, and the debtor has received a discharge in bankruptcy, the judgment is to be enforced to the extent of the nondischargeable debts and treated as discharged as to the balance.[1]

It seems to me, however, that the majority of the court are deciding that where the record shows that some portion of the judgment represents nondischargeable debts, but does not show the amount thereof, nor that the entire judgment was nondischargeable, the entire judgment will be treated as nondischargeable.

This result, in my opinion, is contrary to the rule that the burden of establishing nondischargeability is on the judgment creditor.[2]

An intermediate appellate court in California has held that where it can be determined from the record that some part of a judgment represents a nondischargeable debt, but

be held discharged and part not. In *Digoras* and in the instant case the record did not permit such a division. The *Digoras Case* can be distinguished from the case at bar by the fact that the debtor (Digoras) was able to show that part of the debt was not based upon a wilful and malicious injury of property, whereas Shelton did not come forward with any proof that his debt was at least in part dischargeable.

[1] *Tudryck v. Mutch* (1948), 320 Mich. 86, 30 N. W. (2d) 512.
[2] See 8B C. J. S., Bankruptcy, p. 149, sec. 586.

it is impossible to determine how much is of such character, the judgment creditor has not sustained its burden, and the bankrupt is entitled to cancellation of the entire judgment.[3]

The majority approve the drawing of an inference that the defalcation was equal to the difference between the total cost of the building and the contract price. In order to draw such an inference, one must assume that those who completed the work were willing to do it for the difference between the contract price and the amount paid over to Shelton and properly applied by him. Such an assumption seems unwarranted.

Courts have reached different conclusions as to the scope of the investigation into the character of a claim, already reduced to judgment, in a later proceeding where the judgment debtor asserts the judgment has been discharged in bankruptcy and the judgment creditor asserts it represents a nondischargeable debt. The majority appear to hold that the latter inquiry is limited to the record in the action in which the judgment was entered, but some courts have considered new evidence not in such record.[4]

The difficulty arises from the fact that in the first action the parties may have seen no need to litigate some of the issues which later become material in the proceeding to determine whether the claim was dischargeable in bankruptcy. It would seem to me to be a sound and workable practice generally to limit the inquiry to the record in the original action, but to permit the parties to bring in additional evidence where the court is convinced that such supplementation is necessary in order to avoid injustice.

In the proceeding now before us, the testimony in the action was not brought before the court even though that

---

[3] *United States Credit Bureau v. Digoras* (1959), 169 Cal. App. (2d) 673, 337 Pac. (2d) 866.

[4] Anno. 170 A. L. R. 368, 374–378; *Fidelity & Casualty Co. v. Golombosky* (1946), 133 Conn. 317, 50 Atl. (2d) 817, 170 A. L. R. 361.

would have been permissible under the general rule. We have no way of knowing whether it would clarify the matter further, nor whether the circuit court would conclude that the situation calls for supplementary evidence.

If the matter were to be determined on the portion of the record now before us, the judgment should, in my opinion, be deemed discharged and satisfied except for $1,821.55. I would think it fair, however, for the parties to have an opportunity to bring in the evidence in the action, if available, or to urge that supplementary evidence be received. This view would result in reversal and remand for further proceedings.

I am authorized to state that Mr. Justice CURRIE concurs in this opinion.

* Motion for rehearing denied, with $25 costs, on October 1, 1963.