STATE, Respondent, v. HALVERSON, Appellant.

*October 7—November 1, 1966.*

504

For the appellant there were briefs by *Lawton & Cates,* and oral argument by *James A. Olson,* all of Madison.

For the respondent the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, *William A. Platz,* assistant attorney general, and *Thomas L. Massey,* district attorney of Fond du Lac county.

BEILFUSS, J. The defendant contends that the jury instruction given by the trial court as to *prima facie* effect of a demand to show intention to convert to use of the defendant or another was prejudicially erroneous.

The state, in answer to this contention argues (1) that the defendant has waived any objection to the instruction, and (2) that the instruction is not erroneous.

The defendant was charged with a violation of sec. 235.701, Stats.:

"**Building loans; trust funds.** The proceeds of any such mortgage referred to in ss. 215.21 and 235.70, shall, when paid out by such state savings and loan association or such federal savings and loan association or of any other mortgage from any other source and received by the owner of the premises or by any contractor or subcontractor performing the work and labor forthwith constitute a trust fund in the hands of such owner or contractor or subcontractor for the payment pro rata of all claims due and to become due or owing from such contractor or subcontractor for lienable labor and materials until all such claims have been paid. The use of any of such moneys by any owner, contractor or subcontractor for any other purpose until all claims, except those which are the subject of a bona fide dispute, have been paid in full, or pro rata in cases of a deficiency, shall constitute theft of any moneys so misappropriated. . . ."

The parties agree that intent to convert must be proven before a conviction can be had under the provisions of sec. 235.701, Stats.,[2] therefore the theft section of the Criminal Code must be considered. The applicable section is 943.20(1) (b). It is as follows:

" (1) Whoever does any of the following may be penalized as provided in sub. (3) :
"(a) . . .
" (b) By virtue of his office, business or employment, or as trustee or bailee, having possession or custody of money or of a negotiable security, instrument, paper or other negotiable writing of another, intentionally uses, transfers, conceals, or retains possession of such money, security, instrument, paper or writing without the owner's consent, contrary to his authority, and with intent to convert to his own use or to the use of any other person except the owner. A refusal to deliver any money or a negotiable security, instrument, paper or other negotiable writing, which is in his possession or custody by virtue of his office, business or employment, or as bailee, upon demand of the person entitled to receive it, or as required by law, is prima facie evidence of an intent to

---

[2] See *Pauly v. Keebler* (1921), 175 Wis. 428, 185 N. W. 554.

convert to his own use within the meaning of this paragraph."

The defendant, at the trial, by his attorney, submitted to the court a written request for jury instructions. The written request for instructions included the following:

"2. Wis J I—Criminal 1444–Theft by Employee, Trustee, or Bailee (Embezzlement)"

The trial judge included instruction No. 1444 substantially as it appears in the model instructions (Wis J I—Criminal).

The instruction in its entirety will not be repeated here. It includes four essential elements that must be proven beyond a reasonable doubt before the defendant can be found guilty. Included in the model instruction is an alternative section to be used in appropriate cases when a demand for the property has been made by a person entitled to it and the defendant has refused to give it up or return it. This alternative section was given as a part of the instructions to the jury.

Counsel for the defendant asked for a copy of the instructions before they were given. The trial judge informed counsel that he did not have a copy of the instructions to give him. The statute [3] does not require a copy of the instructions be given to counsel before they are given to the jury; it only requires that the instructions be written before given *or* that they shall be taken by the official reporter when given. In any event, error is not claimed in not having a copy of the instructions before they were given to the jury.

After the jury instructions were given and the jury had retired to deliberate, counsel for the defendant objected to the instruction by the following language: "I am going to object to the Court's instruction as to evidence

---

[3] Sec. 270.21, Stats.

received and to demand by Mr. Matthew; . . ." The court noted the objection and did not further instruct the jury.

In the case of *State v. Kanzelberger* (1965), 28 Wis. (2d) 652, 659, 137 N. W. (2d) 419, this court recognized the stature of the Wisconsin Jury Instructions:

"These instructions are the product of painstaking effort of an eminently qualified committee of trial judges, lawyers, and legal scholars, designed to accurately state the law and afford a means of uniformity of instructions throughout the state. They are, as stated by counsel, 'the general instructions used in cases of this kind.' These uniform instructions are not infallible. However, their content is readily known and if they are considered inaccurate or prejudicial they should be challenged by written requested instructions or at least objection made on the record at the time they are given so that if they are erroneous, correction can be made before the jury arrives at a verdict."

In this instance counsel made a specific written request for a model instruction by its number. The portion of the instruction of which defendant now complains was given substantially as it appears in the model instruction. If counsel was of the belief that a part of the instruction should not be given or that a particular alternative part should not be given, it was his duty to make this fact specifically known in his written request. When a written request is made by reference to a model instruction by number, the trial court cannot be expected to know of any exceptions or reservations that counsel has to the instruction.

Objections to an instruction must be made at a time when an error, if it be one, can be corrected. Here the objection was made right after the jury retired to deliberate. It is probably preferable, as a matter of trial procedure or trial tactics, to wait until the charge to the jury is completed to voice an objection to an instruction rather than to interrupt with an objection at the instant the challenged instruction is given. In any event, we conclude the objection was timely made. The jury could

have been recalled for further instruction at this very early stage of their deliberations without any significant disruption.

The objection itself, however, was completely inadequate. From the language of the objection quoted above, it was impossible to determine in what respect any instruction was being challenged. The objection should be specific—it should not only identify the particular instruction or instructions objected to, but should also state what counsel contends is the proper instruction. This is especially so when the court has given the instruction requested by counsel.

We hold counsel has waived any objection to the court's instruction to the jury by his request for the model instruction given and by failure to make specific objection to the challenged instruction.

We could affirm the judgment upon the ground that any objection to the court's instructions to the jury has been waived, but because the claimed erroneous instruction is based upon an alleged inadequacy of a statute we deem it advisable to consider the merits of the defendant's objection.

The instruction to which the defendant now voices an objection was given as follows:

"Evidence has been received that the Matthews made a demand upon the defendant to deliver the certain monied instrument or its equivalent back to them and that the defendant refused to deliver it or failed to do so. Under the Criminal Code of the State of Wisconsin, a refusal to deliver property which is in ones possession or custody by virtue of his being a trustee, upon demand by the person entitled to receive it, is prima facie evidence of intent to convert it to his own use within the meaning of the Criminal Code. If, therefore, you are satisfied beyond a reasonable doubt from the evidence in this case the Matthews who were entitled to receive back this monied instrument or its equivalent made a demand upon the defendant for the property, that the defendant refused to deliver such property and that such property was in the defendant's possession or custody by virtue of

his being a trustee, then if you are satisfied beyond a reasonable doubt that there are no circumstances to rebut or to explain away such evidence, you may, on this evidence alone, find that the defendant intended to convert such property to his own use or that of the corporation."

The defendant does not dispute that Mr. Matthew made a demand on him for payment which he refused to honor. Nor does he claim there was proof to rebut or explain away the evidence of demand and refusal. His contention is that the trial court's instruction as to demand was erroneously inconsistent with the statute, and prejudicial.

The defendant's principal objection is that the word "trustee" is contained in the first sentence of sec. 943.20 (1) (b), Stats., but is significantly absent from the second sentence of the statute.

The statute, sec. 943.20 (1) (b), quoted again, is as follows:

"By virtue of his office, business or employment, or as trustee or bailee, having possession or custody of money or of a negotiable security, instrument, paper or other negotiable writing of another, intentionally uses, transfers, conceals, or retains possession of such money, security, instrument, paper or writing without the owner's consent, contrary to his authority, and with intent to convert to his own use or to the use of any other person except the owner. A refusal to deliver any money or a negotiable security, instrument, paper or other negotiable writing, which is in his possession or custody by virtue of his office, business or employment, or as bailee, upon demand of the person entitled to receive it, or as required by law, is prima facie evidence of an intent to convert to his own use within the meaning of this paragraph."

It is apparent that the same class of persons are named in both sentences of the statute, except that "trustee" is omitted from the second sentence.

The defendant contends that the omission of the word "trustee" was not inadvertent draftsmanship but that it

was the intention of the legislature to exclude "trustee" from the class of fiduciaries against whom an intention to convert could be inferred from an unexplained refusal to honor a proper demand.

Sec. 943.20 (1) (b), Stats., came into being as a part of the 1955 Revised Criminal Code. The legislative history [4] and scholarly comment by Professor Baldwin [5] are convincing that it was the intention of the legislature to retain the previous substantive law and at the same time eliminate a multitude of specific statutes and irrelevant technical differences in dealing with bailees, trustees, factors, agents, contractors, warehousemen, attorneys, bankers, and others who bear special responsibilities toward the owners of entrusted property.

Under previous law, secs. 343.20 and 343.21, Stats. 1953, trustees were clearly included under both the substantive crime and the evidentiary provision. When the Criminal Code was introduced to the 1955 legislature as Bill No. 814,A., the word "trustee" was not found in either sentence of sec. 943.20 (1) (b). The words "trustee or" were added to the first sentence by the Legislative Council's Amendment 1A. The Legislative Council's Digest of Council Bills in the 1955 session explains the "trustee" part of the amendment at page 26:

"The section on theft was modified by adding the word 'trustee' to the list of persons who may be guilty of the crime formerly known as embezzlement. The purpose was to make clear that persons such as a trustee under the Uniform Trust Receipts Act or a borrower under the Factor's Lien Law are covered."

Thus the purpose of the inclusion of "trustee" in the first sentence was not to prescribe a different evidentiary standard for conviction of trustees under the statute

---

[4] Wisconsin Legislative Council, 1953 Report, Vol. 5, p. 116.

[5] Baldwin, Criminal Misappropriations, 44 Marquette Law Review (1960–1961), 253, 268.

than for the conviction of bailees. The inadvertent omission of the word from the second sentence of sec. 943.20 (1) (b), Stats., should be of no moment. No sufficient reason has been advanced as to why trustees should be treated differently than other fiduciaries with possession of entrusted funds.

The first sentence of sec. 235.701, Stats., provides that proceeds of a mortgage received by a "contractor or subcontractor performing the work and labor forthwith constitute a trust fund in the hands of such . . . contractor or subcontractor for the payment pro rata of . . . all such claims" for lienable labor and materials.

When the check in question came into the hands of the Odin Company it became a trust fund for the payment of lienable claims. If the $2,017.80, the proceeds of the check, in the hands of Odin was a trust fund, Odin was the trustee.

The first sentence of sec. 943.20 (1) (b), Stats., encompasses those who "by virtue of his office, business or employment, or as trustee or bailee" have possession of money or property. The "demand" sentence of the statute also enumerates those in possession "by virtue of his office, business or employment."

The defendant, Roy Halverson, was president of Odin. He was authorized to sign checks so as to disburse funds. He therefore came into possession of the check in question by virtue of his office or employment and as such was a trustee.

The defendant in his argument attempts to define duties and obligations of a trustee. He does so in the sense of an express trust. We are dealing here not with an express trust but rather a trust created by the operation of law.

"*Trust by Operation of Law.* A cardinal distinction between an 'express trust' and 'trust by operation of law' is that the former is based upon a direct declaration or expression of intention usually embodied in a contract,

whereas the latter is raised by a rule or presumption of law based on acts or conduct rather than on direct expression of intention. Bowen v. Darden, 84 S. E. 2d 289, 291, 241 N. C. 11." 42A Words and Phrases (perm. ed. 1966 pocket part).

Reading the two statutes together as we must, we conclude that the legislature intended no different standard for trustees created by the statute itself than for officers or employees. Officers or employees and trustees are in fact synonymous for the purposes intended by the statute.

The main purpose of the statute is clear. It is designed to prevent the disposition of funds for purposes other than lienable claims. Were it not so, the owner, in this case, could find himself in a position where he would have to pay twice—the lien claim and the mortgage. This is precisely what happened here.

We conclude that the "demand" instruction, wherein the defendant was described as a trustee, was within the intention of the legislature and the contemplation of the statute, and that any reasonable person reading the two sections together would understand it to be so. The instruction was not prejudicially erroneous to the defendant.

We have noted other arguments of the defendant, such as the money had been disbursed when the demand was made and claimed lack of knowledge of the claims of Century Roofing and Thiensville Lumber. We find no merit to these arguments.

*By the Court.*—Judgment affirmed.