STATE, Plaintiff-Respondent, v. WOLTER, Defendant-Appellant.

Court of Appeals, District I

*No. 77–655–CR. Argued August 16, 1978.—*
*Decided September 7, 1978.*
(Also reported in 270 N.W.2d 230.)

354

356

358

For the appellant there were briefs by *Suran & Suran* and oral argument by *Robert H. Suran,* Milwaukee.

For the plaintiff-respondent the cause was argued by *Betty R. Brown,* assistant attorney general, with whom

on the brief was *Bronson C. La Follette,* attorney general.

Before DECKER, C.J., CANNON, P.J., and MOSER, J.

MOSER, J.   The five issues presented on appeal are:

1. Were secs. 289.02(5) and 943.20, Stats., properly applied to Wolter's acts?

2. Did the state present evidence sufficient to meet its burden of proof with regard to the intent required by sec. 943.20(1)(b), Stats.?

3. Did the trial court properly instruct the jury that a demand for and a refusal to pay trust monies to those entitled to receive them is *prima facie* evidence of an intent to convert?

4. Did the trial court commit prejudicial errors throughout the trial?

5. Did the trial court's order for restitution conflict with a federal discharge in bankruptcy?

Wolter and his wife were the sole owners and stockholders of Warjo Construction, Inc. (Warjo) and were its president and secretary respectively. Wolter was also its chief operating officer. Warjo was primarily engaged in purchasing and developing land, arranging for financing the construction of various units, acting as general contractor, and selling the units upon completion.

In 1975, Warjo purchased land on Granville Road in Milwaukee, with plans to develop a 14 unit apartment project. Wolter went to Heritage Savings & Loan Association (Heritage), seeking a construction loan for this project. On December 30, 1975, a construction loan agreement for the Granville Road project was executed with the loan amount set at $259,000. A note, secured by a construction mortgage with Heritage as mortgagee, was signed by Wolter and his wife as officers of the corporation and also as personal guarantors.

The loan agreement provided that the proceeds of the construction loan were to be used solely for the Granville

Road project. As certain stages of construction were completed and after inspection of the site by Heritage personnel, the corporation would receive a draw from Heritage to pay subcontractors and materialmen.

Subcontracts were let by Warjo and construction was begun. Among the subcontractors were: EZ Roofers Company (roofing), General Lumber and Supply Company (building materials), Henry Marohl (excavation), Stolze Masonry, Inc. (masonry) and Carl Zeeb (carpentry).

Between February and July 14, 1976, Wolter requested and received six draws from Heritage totalling approximately $118,000. This included money to pay the subcontractors and materialmen on the Granville Road project. The checks were received by Warjo and, at Wolter's direction, were deposited in the Warjo checking account. Wolter signed all checks disbursing this money.

Among the subcontractors and materialmen who were not paid are: EZ Roofers $4,187.50; General Lumber and Supply $33,134.98 (with discount $27,169.74) ; Henry Marohl $1,599.50; Stolze Masonry $18,437.70; and Carl Zeeb $16,000, totalling some $67,000.

Heritage did not authorize the use of draw monies for any purpose other than paying the subcontractors and materialmen on the Granville Road project. The subcontractors and materialmen did not authorize the payment of draw monies on their behalf to anyone else. All repeatedly and unsuccessfully demanded payment from Wolter. Other subcontractors were also not paid. The draw monies were paid to corporate creditors, but not necessarily for the Granville Road project. No further draws were made after July 14, 1976 because construction work ceased. At the time of trial $80,000 remained in the draw account at Heritage. The cost of completion of the project is estimated to be in excess of $200,000.

On January 6, 1977 a criminal complaint was filed charging the defendant with ten counts of theft by contractor. After a waiver of the preliminary examination, an information charging one count of theft by contractor was filed. Wolter entered a plea of not guilty. At the conclusion of the trial, the jury found Wolter guilty as charged. It found the value of the stolen property to be $65,200.

### Applicability of sec. 943.20(1)(b)

Sec. 289.02(5) is a criminal statute,[1] creating the crime of theft by contractor punishable under the provisions of sec. 943.20, Stats.[2] Sec. 289.02(5), Stats., also creates civil liability.[3] The two statutes are *in pari materia* and should be read and harmonized where it is possible to do so.[4] It is the duty of the court to construe these statutes, making both operative.[5]

Aside from the differing burdens of proof in the civil and criminal actions for theft by contract, the only difference between them is the additional element of wrongful intent required in the criminal action.[6]

Wolter argues that since he is an owner/prime contractor, sec. 943.20(1)(b), Stats., is inapplicable to him. He asserts that as the owner described in that section of the statute he cannot steal from himself. He concludes

---

[1] *Burmeister Woodwork v. Friedel*, 65 Wis.2d 293, 300–02, 222 N.W.2d 647 (1974).

[2] *State v. Halverson*, 32 Wis.2d 503, 508, 145 N.W.2d 739 (1966).

[3] *Burmeister, supra* at 301.

[4] *In the Matter of the Estate of Walker*, 75 Wis.2d 93, 102, 248 N.W.2d 410 (1977); *State v. Halverson, supra* at 515.

[5] *State v. Klein*, 25 Wis.2d 394, 404, 130 N.W.2d 394 (1964).

[6] *Burmeister, supra* at 301; *Pauly v. Keebler*, 175 Wis. 428, 436, 185 N.W. 554 (1921).

that the only remedy against an owner/prime contractor is the civil remedy under sec. 289.02(5), Stats.

The failure of this argument is that sec. 289.02(5), Stats. not sec. 943.20, Stats., creates the crime of theft by contract. Sec. 943.20, Stats., is only the conduit through which the crime of theft by contract becomes operative in criminal proceeding pursuant to sec. 289.02 (5), Stats. These statutes must be harmonized.[7]

Mortgage money was given by Heritage to Wolter, as prime contractor and president of Warjo, only for improvements to the Granville land to pay for labor and materials until all claims were paid. The trial record unequivocally demonstrates that the Heritage mortgage money was used for other corporate purposes, such as office rent, utilities, salaries, interest due on other corporate obligations and real estate taxes on other corporate properties. The jury found that $65,200 in claims for materials and labor were outstanding at the time of trial. Those claims were the claims of EZ Roofers, General Lumber and Supply, Henry Marohl, Stolze Masonry, and Carl Zeeb. The use of the Heritage mortgage funds by Wolter, the president of Warjo and the owner/prime contractor, for any other purpose until all claims for materials and labor had been paid is theft by contractor.

Wolter next maintains that the application of sec. 943.20(1)(b), Stats., in this case is not only erroneous but unconstitutional for vagueness. This statute refers specifically to a trustee, having possession or custody of money, who intentionally uses such money without the owner's consent, contrary to his authority, and with intent to convert to his own use, being subject to the criminal sanctions. Wolter claims the application of this statute in this case is unconstitutionally vague as it pro-

---

[7] *Halverson, supra* at 515.

vides that Wolter, "an owner," is guilty of a crime of theft from himself. As previously stated, the crime of theft by contract is created in sec. 289.02(5), Stats.; sec. 943.20, Stats., is only the conduit through which the crime of theft by contract is processed.

The state concedes, and rightly so, that criminal statutes are to be strictly construed and if such statutes are "vague" they violate the due process clause of the Fourteenth Amendment to the United States Constitution. The concept of vagueness rests on the constitutional principal that due process requires fair notice and proper standards for adjudication. The test is whether the statute, read as a whole, is so indefinite and vague that an ordinary person could not be cognizant of and alerted to the type of conduct, either, active or passive, that is prohibited by the statute. This test does not mandate the line between lawful and unlawful conduct be drawn with absolute clarity and precision. Not every instance of indefiniteness or vagueness is fatal to a criminal statute. A fair degree of definiteness is all that is required.[8]

No such vagueness exists in sec. 289.02(5), Stats., which creates the crime of theft by contract as it gives fair notice and proper standards for adjudication. It is clear notice to any citizen of this proscribed crime of theft by fraud. This statute can be easily harmonized with sec. 943.20 as the conduit through which the criminal sanctions of sec. 289.02(5) are operative. Wolter, the owner/prime contractor, is a trustee of the Heritage construction mortgage funds owed to material and labor suppliers such as EZ Roofers, General Lumber and Supply, Henry Marohl, Stolze Masonry and Carl Zeeb.

Furthermore, Wolter is no unsophisticated citizen. The record here clearly shows that he and Warjo were

---

[8] *State v. Cortney*, 74 Wis.2d 705, 709–10, 247 N.W.2d 714 (1976).

involved in numerous transactions involving single or multi-family dwellings on land. The record clearly establishes his personal involvement in many construction mortgage transactions between the years 1971 and 1977. The record clearly establishes that he was involved in numerous draws of money from such construction mortgage funds. It clearly establishes that he was involved in handling more waivers of liens and trust receipts than he could remember.

Wolter's next assignment of error is that he as "owner" of the land cannot be equated with the "trustee" in sec. 943.20(1)(b), Stats., who intentionally uses, conceals, or retains possession of money without the "owner's" consent contrary to his authority, and with intent to convert to his own use. Sec. 943.20, Stats., is the criminal conduit through which theft by contract of all misappropriated funds established in sec. 289.02(5), Stats., is processed. The "trust" herein is money paid by the mortgagee, Heritage, to Wolter (Warjo), to be used only in payment of material and labor claims on the Granville project. Sec. 289.02(5), Stats., establishes the test not only for the protection of the owner but also for the protection of materialmen and labor suppliers. Here Wolter never paid the material or labor suppliers named in the criminal complaint and used the mortgage proceeds for other corporate purposes in violation of the criminal aspect of sec. 289.02(5), Stats., punishable under sec. 943.20, Stats. The parties protected by this statute are the mortgagee, the owner, and the material and labor suppliers. Any or all of these parties can seek the criminal sanctions of the statute. In this case it was the mortgagee and the material and labor suppliers.

A prime contractor who is an owner of land and who acts as his own general contractor in improving such land, is a trustee of funds under sec. 289.02(5), Stats., for the benefit of the mortgagee and the material and labor suppliers.

Wolter further asserts that because three of the five subcontractors consented to "hold" Warjo's checks for a period of time before cashing them, and further that the other two were aware of Wolter's business practice of giving checks and asking subcontractors to "hold" them, they could not claim at trial that a theft occurred. The record does reflect that Marohl got a check and deposited it in his bank. His bank informed him that the Warjo account was closed. He went to Wolter who gave him a new check and a trust receipt securing his money from the mortgagee. Stolz got a check from Wolter on a closed account. He took another check and agreed to hold it but also got a trust receipt from Wolter. Zeeb got a check from Wolter on a closed account but that check was made good. The record does disclose that General Lumber and Supply was aware of Wolter's business practices. The record does not disclose that EZ Roofers was aware of Wolter's business practices. In fact the record discloses that EZ Roofers was not paid on this Granville Road project as well as three other Wolter projects.

The record does disclose without doubt that ultimately all five of these subcontractors and materialmen made demand on Wolter for the funds due them on the Granville Road project and that Wolter never paid them. The record Wolter himself made is that he did not pay these amounts owed them. Wolter admits he had one checking account for all corporate purposes of Warjo. All money received from all projects ongoing went into that account and were paid out of that account. All construction mortgage monies tendered by Heritage for the Granville Road project were placed in that account and commingled with rents received from properties, proceeds of sales, and draws from other construction mortgages. Wolter's testimony further establishes that

all such commingled funds were used to pay subcontractors and materialmen on all jobs in progress, rents for Warjo, utilities for Warjo, interest on all ongoing project construction mortgages, taxes on all properties owned, and salaries of Warjo's three employees.

This record meets the test of theft by contractor in violation of secs. 289.02 (5) and 943.20, Stats.

### The State Failed to Prove Criminal Intent Beyond a Reasonable Doubt

In a criminal prosecution the burden is on the state to prove beyond a reasonable doubt every essential element of the crime charged. This standard remains the same on the appellate level. When the defendant challenges the sufficiency of the evidence, the test is rather whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable doubt.[9]

On trial Wolter's counsel presented a proposed instruction based on the content of Wis. J.I.—Criminal 1443, theft by contractor under secs. 289.02 (5) and 943.20 (1) (b), Stats. The comment added to this instruction in paragraph 3 states that in appropriate cases "mortgagee" may be used in place of or in addition to, the word owner.[10] Defense counsel's prepared instruction properly did so.[11] No pattern jury instruction such

---

[9] *Taylor v. State*, 74 Wis.2d 255, 264, 246 N.W.2d 516 (1976).

[10] Wis. J. I.—Criminal 1443, p. 4. See also comments 2 and 25.

[11] Theft by contractor, as defined in section 289.02 (5) of the Wisconsin construction lien law (and section 943.20 (1) (b) of the Criminal Code of Wisconsin), is committed by one who, acting as a prime contractor, receives money for the improvement of land from the mortgagee thereof and who, without the consent of the mortgagee, contrary to his authority and with intent to convert the money to his own use intentionally uses such of the

as the paraphrase of the one used is carved in rock for all ages. An instruction must be employed to fit the case

money as constitutes a trust fund for any purpose other than the payment of claims due or to become due from the prime contractor for labor and materials used in the improvements before all claims (or portions of claims not the subject of a bona fide dispute) are paid in full.

Before the defendant may be found guilty of theft by a contractor, the State must prove by evidence, which satisfies you beyond a reasonable doubt, that there were present the following six elements of this offense:

First, that the defendant was acting as a prime contractor. Prime contractor means "an owner of land who acts as his own general contractor in improving such land."

Second, that while so acting, he received money for the improvement of land from the mortgagee thereof. Building an apartment complex is an improvement of land. Mortgagee means a financial institution that lends money for the construction of the improvement and receives a mortgage on the improvement. Under section 289.02(5) of the Wisconsin Statutes, such money constitutes "a trust fund in the hands of the prime contractor or subcontractor in the amount of all claims due or to become due or owing from the prime contractor for labor and materials used for the improvements, until all the claims have been paid." This means all the claims actually incurred, or to be incurred, for labor and materials for the entire contract or subcontractor, not merely what the contractor anticipated they would be.

The third element is that the defendant intentionally used a part of the proceeds for a purpose other than the payment of claims due to become due from him for labor and materials used in the improvements before all claims (or portions of claims not the subject of a bona fide dispute) were paid in full. "Intentionally" means that the defendant must have had a purpose to use the money for other than the payment of all claims due or to become due from him for labor and materials used in the improvements before all such claims were paid, and that the defendant must have knowledge of those facts which are necessary to make his conduct criminal and which are set forth after the word "intentionally" in the statute allegedly violated. The words to be so construed are:

"Intentionally uses, transfers, conceals, or retains possession of such money, security, instrument, paper or writing without the

before the jury. The trial court has great leeway in forming instructions. It is not necessary that there be

owner's consent, contrary to his authorization and with intent to convert to his own use or the use of any other person except the owner."

Fourth, that such use was without the consent of the mortgagee and contrary to the defendant's authority. "Without the consent of the mortgagee means that there was no consent in fact by the mortgagee to use the money for any purpose other than the payment of all claims due or to become due from the defendant for labor and materials used in the improvements before all claims (or portions of claims not the subject of a bona fide dispute) were paid." If you find from the evidence that the mortgagee permitted the defendant to use the money for some other purpose than the payment of claims due or to become due before all such claims were paid in full (or to the extent not in bona fide dispute), then the defendant acted with consent and there is not theft by contractor.

Fifth, that the defendant knew that such use of the money was without the consent of the mortgagee and contrary to defendant's authority.

Sixth, that the defendant used such money with intent to convert it to his own use. The phrase "intent to convert it to his own use" means that the defendant must have had the mental purpose to use, appropriate or convert such money to his own personal use. You cannot look into a man's mind to find out his intent. While this intent to convert, use or appropriate the money to his own use must be found as a fact before you can find the defendant guilty of theft by a contractor, it must be found, if found at all, from his acts and his words and statements, if any, bearing upon his intent.

A refusal to deliver any money which is in the contractors possession or custody by virtue of his receiving such money from the mortgagee for a specific land improvement, upon demand of the person entitled to receive it, or as required by law, is prima facie evidence of an intent to convert to his own use.

If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant was acting as a prime contractor, that he received money from the improvement of land from the mortgagee thereof, that he intentionally used any of such money constituting a trust fund for a purpose other than the payment of claims due or to become due from the defendant for labor and

exact conformity to the suggested instructions even where such instructions would be completely appropriate. It is even more appropriate not to give the exact suggested instruction where the situation envisioned by such instruction varies from the situation at issue. The instruction given must be geared to the facts at hand and framed in light of the evidentiary issues.[12] The instruction devised by Wolter's counsel fits the purposes for which it was used to establish the grounds for a violation of secs. 289.02(5) and 943.20 when the owner of the land is also the prime contractor accused of such violations.

The trial court's instructions to the jury are not part of the record albeit the record disclosed what he intended to give. The record discloses that the trial court used instructions Wis. J.I.—Criminal 140 burden of proof, presumption of innocence. The jury heard the evidence, counsel's arguments and the court's instructions. They found Wolter guilty of theft by contract of $65,200.

When the defendant challenges the sufficiency of evidence, the appellate test is whether the evidence adduced, believed and rationally considered by the jury was suf-

---

materials used in the improvements before all such claims (or portions of claims not the subject of a bona fide dispute) were paid in full, that he acted without the consent of the mortgagee and contrary to his authority, that he knew that such use was without the consent of the mortgagee and contrary to his authority, and that he acted with intent to convert the money so used to his own use, then you should find the defendant guilty of theft by a contractor as charged in the information, and you should find the amount of money so misappropriated and insert the same in the verdict.

If, however, you are not so satisfied, then you must find the defendant not guilty of theft by a contractor.

[12] *Carlson v. Drews of Hales Corners*, 48 Wis.2d 408, 414, 180 N.W.2d 546 (1970).

ficient to prove the defendant's guilt beyond a reasonable doubt.[13] Wolter has failed to meet that requisite appellate standard of review to upset the jury verdict.

The defendant next contends that the facts brought out at trial failed to establish that Wolter ever had the requisite criminal intent to convert these funds. By its nature, intent is always an elusive element, rarely susceptible to proof by direct evidence. A defendant's intent or state of mind can be inferred from his acts, surrounding the circumstances, and the inferences fairly deducible from the circumstances.[14]

The use of any such monies by any prime contractor for any other purpose until all claims have been paid in full is theft by contract. A refusal to deliver any money which is in his possession or custody as a trustee, upon demand of the person entitled to receive it is *prima facie* evidence to convert it to his own use within the meaning of this paragraph. Intent used here is criminal intent and is only required in the context of the two statutes when the state is seeking the criminal remedy.[15]

Wolter claims here that he rebutted the state's witnesses' testimony on intent because there is no showing beyond a reasonable doubt that he intended to convert the lienholder's money to his own personal use. Statutes *in pari materia* must be read together.[16] The statute creating the crime of theft by fraud uses the term "for any use." This does not limit the use of trust money to the personal use of Wolter. Wolter did not rebut the testimony of the state's witnesses.

---

[13] *Taylor v. State, supra.*
[14] *Garcia v. State,* 73 Wis.2d 174, 183, 242 N.W.2d 919 (1975).
[15] *Burmeister, supra* at 299–303; see also *Halverson, supra.*
[16] *Halverson, supra.*

Wolter next contends the trial court erred when it gave the *prima facie* instruction to the jury. The district attorney requested that this instruction be placed at the end of paragraph 6 of defense counsel's instruction.[17] This *prima facie* instruction is taken from the last sentence of sec. 943.20 (1) (b), Stats.

The testimony in the record is simply uncontradicted that Heritage gave Wolter $118,000 of construction mortgage money. That money was trust money in his possession. Those trust monies were to be used only for the payment to subcontractors who provided materials and labor on the Granville Road project and not for any other purpose, until their claims were paid in full. The subcontractors and materialmen demanded their money ($65,200) and Wolter refused to pay them. This is unrebutted and under these statutes is *prima facie* evidence of intent to convert to one's own use as well as for any other purpose.

Under these circumstances it was proper for the trial court to give the *prima facie* instruction requested.

### Judge's Conduct

During the course of the trial the trial court interrupted both counsel's questioning of various witnesses numerous times with his own questions. Only on one occasion, when he interrupted defense counsel's direct examination of the witness Christine Wakeley, was any objection raised to this form of questioning. The trial court sustained the defense counsel's objection to its own question. A trial court is expressly authorized to question witnesses.[18] It must be careful not to function as a

---

[17] Wis. J.I.—Criminal 1443.

[18] Sec. 906.14(2), Stats.

partisan or advocate.[19] The judge should not take any active role in trying the case either for the state or for the defense. It does have a responsibility to clarify questions and answers where obvious important evidentiary matters are ignored or inadequately covered on behalf of the state or the defendant.[20]

As in *Asfoor* and *Garner* this trial court took an active role in questioning witnesses for both the state and the defense.

Objections to alleged judicial misconduct must be timely made. A failure to make a timely objection constitutes a waiver of objection. The objection must be made as soon as the objectionable nature of the testimony is reasonably apparent.[21] The Wisconsin Supreme Court has consistently held that they will not consider issues raised for the first time on appeal.[22]

No objections, save one that was sustained, were made during the trial. No post conviction motions concerning this subject matter were made or argued to the trial court. The notice of appeal contains no reference to the subject matter of this issue. This court will not consider this issue raised for the first time on appeal.[23]

### Bankruptcy Issue

Wolter's sentence provided as a condition of probation that during the five year probation period Wolter make restitution in the amount of $65,200. Wolter argues that the Federal Bankruptcy Court has original and exclusive

[19] *State v. Asfoor,* 75 Wis.2d 411, 437, 249 N.W.2d 529 (1977).

[20] *State v. Garner,* 54 Wis.2d 100, 104, 194 N.W.2d 649 (1972).

[21] *Simpson v. State,* 83 Wis.2d 494, 509, 266 N.W.2d 270 (1978).

[22] *Allen v. Allen,* 78 Wis.2d 263, 270, 254 N.W.2d 244 (1977).

[23] *Plesko v. Allied Investment Co.,* 12 Wis.2d 168, 175, 107 N.W.2d 201 (1960); sec. 817.11(2), Wis. Stats.

jurisdiction over bankruptcy proceedings including the power to discharge or refuse to discharge bankrupts, set aside discharges, determine the dischargeability of provable debts, and render judgments therein.[24] Wolter further argues that since the bankruptcy petition was filed March 23, 1977 and the discharge which included these debts to the subcontractors and materialmen was granted November 14, 1977 the trial court had no jurisdiction to require as a condition of probation payment of $65,000.

Nowhere in the record are the dates March 23, 1977 or November 14, 1977 to be found. There is some testimony by Wolter concerning bankruptcy in the trial record. Much of the August 31, 1977 hearing on Wolter's motion for judgment notwithstanding the verdict concerned itself with discussion of the pending bankruptcy action. On September 23, the date the trial court set for sentencing, there was discussion of the pending bankruptcy. The trial court agreed to adjourn sentencing to December 2. The trial court sentenced Wolter December 2. This hearing also concerned itself with the pending bankruptcy action.

On January 20, 1978, Wolter filed a motion to modify the sentence asserting that the order for restitution conflicted with the exclusive jurisdiction of the Federal Bankruptcy Court. On February 10, this motion was heard and denied by the trial court in an oral decision, which was neither reduced to writing nor rendered or entered as required.[25] To be appealable, an order must be reduced to writing,[26] in order to preserve evidence of the order and to confer appellate jurisdiction.[27] Since

---

[24] 11 U.S.C. §§11, 35 (1974).

[25] Sec. 807.11(1), (2), Wis. Stats.

[26] Sec. 817.11(4), Stats.

[27] *Tadysak v. Foht*, 78 Wis.2d 582, 585, 255 N.W.2d 87 (1976); *State v. Powell*, 70 Wis.2d 220, 221, 234 N.W.2d 345 (1975).

the oral decision denying the motion to modify the sentence was never reduced to writing nor rendered and entered as required, this tribunal has no jurisdiction.

*By the Court.*—Judgment affirmed.