729 F.2d 502
 11 Bankr.Ct.Dec. 1176, Bankr. L. Rep. P 69,732
 In the Matter of Paul E. THOMAS, Charlene S. Thomas, d/b/a
Thomas Landscaping Company, Thomas Landscaping
Company, Inc., Bankrupts.
Appeal of JOSEPH LORENZ, INC.
 No. 83-1914.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 28, 1983.
Decided March 7, 1984.
 
 John T. McCann, Milwaukee, Wis., for appellant.
 Richard H. Bussler, Polidori & Bussler, Milwaukee, Wis., for appellees.
 Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and GRANT, Senior District Judge.*
 CUMMINGS, Chief Judge.
 
 
 1
 In this case defendants Paul Thomas and his wife, Charlene Thomas, doing business as Thomas Landscaping Company (or Inc.), filed a bankruptcy petition on May 5, 1981. Plaintiff Joseph Lorenz, Inc. (Lorenz) filed a complaint in the bankruptcy proceedings on July 24, 1981. Its complaint alleged that plaintiff was engaged in the general contracting business in Hartland, Wisconsin, and was the prime contractor on the Green Market project for the City of Milwaukee. On April 2, 1980, defendants entered into a contract with plaintiff under which they agreed to do the landscaping on the Green Market project for $23,500.[1] Plaintiff alleged that it paid defendants $21,530 for the landscaping which they allegedly held in trust under Wis.Stat. Sec. 779.16 "for the payment of labor, suppliers and materials to be used or consumed on the Green Market project" (App. 8). Defendants were charged with using the $21,530 "for purposes other than completing their subcontract with the plaintiff" (id.) instead of using the $21,530 for the payment of suppliers and completing their contract with the plaintiff for landscaping this public improvement. Consequently plaintiff was forced to complete the landscaping on the Green Market project, costing plaintiff an additional amount. Because of defendants' "defalcations", plaintiff claimed that defendants' debt to plaintiff was not discharged in view of the fourth and sixth exceptions contained in 11 U.S.C. Sec. 523(a)(4) and (6).[2] Both the bankruptcy judge, 21 B.R. 553, and the district judge, 34 B.R. 103, held that Paul Thomas was acting in a fiduciary capacity with respect to plaintiff within the meaning of Wis.Stat. Sec. 779.16[3] when he received funds plaintiff paid to defendants' subcontracting business in December 1980 and January 1981 for public improvements on the Green Market project. Consequently both the bankruptcy judge and the district judge held that some of the debt from Thomas to plaintiff was not dischargeable under Section 523(a)(4) of the Bankruptcy Code.
 
 
 2
 Plaintiff has appealed on the ground that more of the debt was nondischargeable, but defendants have not cross-appealed.
 
 
 3
 Bankruptcy Judge Shapiro concluded that only Thomas' pre-default obligations which plaintiff was required to satisfy by payment to Thomas' unpaid suppliers were nondischargeable. These obligations totalled $2,658.43 and consisted of an unpaid bill to defendants for $2,861.52 from Neenah Foundry Company for tree grates settled by plaintiff for $2,162.56 and an unpaid bill to defendants for $495.87 from Hamele Recreation Company for waste receptacles and accessories, both paid by plaintiff after defendants ceased working on the project.
 
 
 4
 However, he refused otherwise to hold nondischargeable any of the $22,730 plaintiff advanced to defendants in December 1980 and January 1981 or to hold nondischargeable the various labor and material costs plaintiff incurred to complete the Green Market project after defendants' November 1980 default.
 
 
 5
 The bankruptcy judge reasoned that since plaintiff was required to pay defendants' materialmen, plaintiff had "the right to proceed against Paul[4] in the same manner Paul's suppliers would otherwise have been able to so proceed had they not been paid." 21 B.R. 553, 558 (Bkrtcy.E.D.Wis.1982). This was because the Wisconsin statute was intended "to protect workmen and suppliers who have furnished labor and material as well as owners against irresponsible or underfinanced building contractors diverting funds to unrelated projects or for personal use" (id.; emphasis supplied). Since debtor Thomas testified that he knew that plaintiff would have to pay Thomas' suppliers if they were not fully paid and that only $4,925.46 of the funds received from plaintiff by Thomas was definitely used to pay any suppliers on the Green Market project, the bankruptcy judge found that there was a "defalcation" by Thomas within the meaning of Section 523(a)(4).
 
 
 6
 Plaintiff appealed to the district court from the bankruptcy judge's decision on the ground that in excess of $15,000 was nondischargeable (see n. 5 infra ) instead of merely the $2,658.43 allowed by the bankruptcy judge, but District Judge Evans also concluded that only $2,658.43 was directly attributable to Thomas' diversion of funds. On appeal to this Court, plaintiff insists that under trust principles the proper surcharge should be the amount of plaintiff's payments to defendants less the defendants' expenditures on the Green Market project. At the same time, plaintiff concedes that defendants should be given credit for their expenditures paid to their suppliers. Therefore plaintiff presently seeks to recover an additional $15,146.11 as not dischargeable.[5]
 
 
 7
 Probably recognizing that 11 U.S.C. Sec. 523(a)(4) has been construed against them in Carey Lumber Co. v. Bell, 615 F.2d 370 (5th Cir.1980) and In Re Johnson, 691 F.2d 249 (6th Cir.1982), defendants no longer contest the applicability of the "defalcation while acting in a fiduciary capacity" exception in 11 U.S.C. Sec. 523(a)(4) to discharge when tied to a state statute such as Wis.Stat. Sec. 779.16, if applicable, nor does plaintiff attempt to recover the amount of the $4,925.46 first check to defendants and Pioneer Nursery and cashed by it. Defendants do not contest the nondischargeability of the $2,658.43 it owed to the Neenah Foundry Company and the Hamele Recreation Company at the time defendants ceased work on this project. The only dispute remaining between the parties is whether the $15,146.11 amount, in addition to the $2,658.43, should be nondischargeable. See n. 5 supra as to these amounts.
 
 
 8
 Nondischargeability of Plaintiff's Claim Because of Defalcation by Defendants
 
 
 9
 Plaintiff made the following payments to defendants by checks totaling $22,730:
 
 
 10
 The first check for $4,925.46 on December 23, 1980, was payable to defendants' company and Pioneer Nursery and paid over to Pioneer for materials supplied defendants for the Green Market project.
 
 
 11
 The second check for $15,774.54 on December 23, 1980, payable to defendants' company, was deposited by Mrs. Thomas in her personal checking account. Until that deposit, her account had a balance of $150.39.
 
 
 12
 The third check is dated January 26, 1981, and in the amount of $2,030. Defendants applied $712 on their home mortgage and deposited the remainder in Mrs. Thomas' checking account or in their joint savings account.
 
 
 13
 Except for the first check endorsed to Pioneer Nursery, neither Mr. nor Mrs. Thomas could point to any check drawn on her checking account or any withdrawals from their savings account to defray any expense on the Green Market project. They worked on the Green Market project only from October 28, 1980, to November 19, 1980, and did not resume work before filing their May 1981 bankruptcy petition.
 
 
 14
 The lower courts erred in refusing to find that the entire $17,804.54 was nondischargeable, at least in the absence of proof by defendants of expenditures for the Green Market project. Defendants only worked on the project from October 28, 1980, to November 19, 1980, requiring plaintiff to complete the landscaping in the spring of 1981. Plaintiff's complaint is for breach of trust rather than breach of contract, so that under trust law the amount of the surcharge should be the amount of the trust funds which the defendants diverted, namely, plaintiff's payments less the defendants' proven expenditures. Defendants should certainly not be permitted to remain as the beneficiaries of the plaintiff's last two progress payments, consisting of $17,804.54, in view of their misappropriation of most or all of the moneys they held in trust for the prime contractor under Wis.Stat. Sec. 779.16. That Section provides that "All moneys * * * paid * * * to any * * * subcontractor for public improvements are a trust fund only in the hands of the * * * subcontractor" (emphasis added) and that "The use of moneys by the * * * subcontractor for any purposes other than the payment of claims on such public improvement, before the claims have been satisfied, constitutes theft by the * * * subcontractor." By virtue of this statute defendants could not use the $17,804.54 trust fund except to pay its Green Market project costs and complete the construction of the public improvement.
 
 
 15
 While defendants contend that they only diverted the $2,658.43 owing the Neenah and Hamele companies, the truth is that they have not shown that any of the $17,804.54 proceeds of the second and third checks from plaintiff were used to pay any of the Green Market project costs. Unless they can show what Green Market costs they paid from the $17,804.54 checks, their additional nondischargeable debt to plaintiff, the beneficiary of the trust fund under Wis.Stat. Sec. 779.16, is $15,146.11.[6]
 
 
 16
 Plaintiff satisfied its burden of establishing nondischargeability by showing that it paid defendants $17,804.54 to complete the work and that the defalcation by defendants occurred when they used this trust fund for their own purposes. Bastian v. LeRoy, 20 Wis.2d 470, 122 N.W.2d 386, 393 (1963). The beneficiaries of the trust established by that provision are not confined to laborers, suppliers and materialmen but include owners and contractors such as plaintiff. See State v. Stepniewski, 105 Wis.2d 261, 314 N.W.2d 98 (1982) and State v. Wolter, 85 Wis.2d 353, 270 N.W.2d 230 (1978) (decided under an almost identical Wisconsin statute); see also Carey Lumber Co., supra, 615 F.2d at 374 (decided under a similar Oklahoma statute). Municipalities would find it much harder and much more costly to find willing contractors for public improvements without the protection afforded them by this statute. To the extent that In re Lotto, 21 B.R. 767 (Bkrtcy.E.D.Wis.1982), may be inconsistent herewith, it is in conflict with State v. Stepniewski, supra, Murphy v. National Paving Co., 229 Wis. 100, 281 N.W. 705 (1938), and State v. Wolter, 85 Wis.2d 353, 270 N.W.2d 230 (1978) and should not be followed.
 
 
 17
 In their brief, defendants assert that our statutory construction of 11 U.S.C. Sec. 523(a)(4) "would be to permit those engaged in business generally [here defendants] to discharge in bankruptcy debts not permitted to be discharged by those engaged as contractors or subcontractors on public projects" (Br. 3). Just the opposite is true. Our construction would not permit subcontractor defendants to discharge such debts in bankruptcy but instead would require that their debts to the prime contractor for the cost of completing the job and for their unpaid bills are not dischargeable. Our construction enables prime contractors on public improvements to be protected from the bankruptcy of their subcontractors in accord with the broad language of Wis.Stat. Sec. 779.16. We of course recognize that a purpose of the Bankruptcy Act is to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh" (Williams v. U.S. Fidelity and Guaranty Co., 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713), but these defendants appropriated plaintiff's payments to their own use, and the amount of nondischargeability sought by plaintiff is not oppressive. Furthermore, plaintiff cannot be faulted for not seeing to the proper application of the $17,804.54 it advanced defendants, for plaintiff was responding to defendants' cries to keep their business afloat so that they could complete the public improvement landscaping. Therefore no purpose of the Bankruptcy Act would be defeated by holding them liable for their full defalcation.
 
 
 18
 Nondischargeability of Plaintiff's Claim Because of Defendants' Willful and Malicious Injury to Plaintiff's Property
 
 
 19
 Section 523(a)(6) of the Bankruptcy Code provides that a discharge under Section 727 of the Bankruptcy Act does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to * * * the property of another entity." Neither the bankruptcy nor the district judge discussed this exception because of their view that Section 523(a)(4), supra n. 2, was applicable. Section 523(a)(6) might well be applicable since Paul Thomas knew that plaintiff had given a performance and payment bond and that if defendants did not use plaintiff's moneys to complete the project and pay defendants' bills, plaintiff or its surety would have to pay defendants' suppliers and finish the work. See In re Nance, 556 F.2d 602, 611 (1st Cir.1977); Bennett v. W.T. Grant Co., 481 F.2d 664 (4th Cir.1973); Den Haerynck v. Thompson, 228 F.2d 72, 74 (10th Cir.1955). However, since both courts properly held that Section 523(a)(4) applies, there is no need for us to determine the applicability of Section 523(a)(6).
 
 
 
 On remand, the bankruptcy judge should compute how much, if any, of plaintiff's advances beyond the initial $4,925.46 was used by defendants on the Green Market project. Absent such proof, $15,146.11 is the additional amount of the misappropriated trust fund nondischargeable under 11 U.S.C. Sec. 523(a)(4). Under Wis.Stat. Sec. 779.16 defendants were prohibited from using the plaintiff's moneys "for any purpose other than the payment of claims" on the Green Market project. Here the evidence shows that the defendants used money to pay the mortgage on their home and to pay business debts unrelated to the Green Market project. None of the $17,804.54 trust fund (consisting of plaintiff's second and third checks to defendants) would belong to them until they completed their contract and paid for all the labor and material used or consumed on the project. Bastian v. LeRoy, supra.
 The judgment below is vacated and this cause is remanded for the bankruptcy judge to determine how much, if any, of the $17,804.54 check proceeds was used by defendants on the Green Market project and hence dischargeable. If no such proof is forthcoming, Paul and Charlene Thomas' nondischargeable debt to plaintiff is an additional $15,146.11.[7] Costs to plaintiff.
 
 
 *
 The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation
 
 
 [1]
 Because of a $1,200 change order, the total contract price was subsequently increased to $24,700 (App.21) and plaintiff ultimately paid defendants $22,730 by January 26, 1981
 
 
 [2]
 Section 523(a)(4) provides:
 A discharge under Sec. 727--of this title does not discharge an individual debtor from any debt--
 (4) for fraud or defalcation while acting in a fiduciary capacity--
 The complaint also relied on the exception contained in 11 U.S.C. Sec. 523(a)(6) providing that debtors are not discharged from any debt "for willful and malicious injury by the debtor * * * to the property of another entity." Plaintiff secondarily relies on this exception.
 
 
 [3]
 Section 779.16 provides:
 THEFT BY CONTRACTORS. All moneys, bonds or warrants paid or to become due to any prime contractor or subcontractor for public improvements are a trust fund only in the hands of the prime contractor or subcontractor and shall not be a trust fund in the hands of any other person. The use of moneys by the prime contractor or subcontractor for any purpose other than the payment of claims on such public improvement, before the claims have been satisfied, constitutes theft by the prime contractor or subcontractor and is punishable under s. 943.20. This section shall not create a civil cause of action against any person other than the prime contractor or subcontractor to whom such moneys are paid or become due. Until all claims are paid in full, have matured by notice and filing or have expired such money, bonds and warrants shall not be subject to garnishment, execution, levy or attachment.
 
 
 [4]
 The bankruptcy judge was referring to defendant Paul E. Thomas but excluded Charlene S. Thomas since he considered she was only remotely involved in the business. 21 B.R. 555-556. We disagree with the bankruptcy and district judges that she should be relieved from liability because of her "minimal" role in the business. The evidence showed that she deposited the major part of plaintiff's payments to the defendants' company and also disbursed the proceeds. Consequently, she cannot be considered a mere figurehead (cf. Burroughs v. Fields, 546 F.2d 215 (7th Cir.1976)) and must be treated like her husband
 
 
 [5]
 This $15,146.11 consists of plaintiff's second and third checks to defendants totalling $17,804.54 less the two suppliers' bills to defendants paid by plaintiff totalling $2,658.43, which the bankruptcy judge already has found nondischargeable. The first check for $4,925.46 was received by Pioneer and hence causes no problem
 
 
 [6]
 See note 5 supra
 
 
 [7]
 See note 5 supra